**Guadalupe Pena TIJERINA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–94–329–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 8, 1996.

Rehearing Overruled April 11, 1996.

Richard L. Manske, Manske & Manske, El Campo, for Appellant.

Steven E. Reis, District Attorney, Bay City, Josh McCown, Assistant District Attorney, Wharton, Robinson C. Ramsey, San Antonio, for Appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

A jury found appellant guilty of murder and assessed his punishment at fifty years in prison. By two points of error, appellant contends that counsel provided ineffective assistance and that the trial court erred in refusing to instruct the jury on appellant's right to arm himself. We affirm.

In March 1982, appellant shot and killed Ramon Torres. After the shooting, appellant went to Mexico. Appellant was tried for Torres' murder in April 1994.

In point of error one, appellant contends that he was denied effective assistance of counsel. The standard by which we review such claims was summarized by the Court of Criminal Appeals in *Jackson v. State*, 877 S.W.2d 768, 770–771 (Tex.Crim. App.1994):

> The proper standard for determining claims of ineffective assistance under the Sixth Amendment is the standard adopted by the United States Supreme Court in *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]. We adopted the *Strickland* standard in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim.App.1986). In *Strickland*, the Supreme Court adopted a two-pronged analysis for claims of ineffective assistance. Under the first prong, the defendant must show that counsel's performance was defi-

cient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Under the second prong, the defendant must show that counsel's deficient performance prejudiced the defense. *Id.* To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance. In addition, when reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065.

Appellant claims that his counsel was ineffective when counsel failed to request a *Batson* hearing [1] after the State struck all Hispanic members of the jury panel and when counsel failed to request the appointment of a new interpreter after inaccurate translations were made.

■ Texas courts have consistently held that there must be some evidence to establish that counsel's failure to challenge the State's strikes was deficient performance and that the defendant was prejudiced when alleged *Batson* error was not preserved. *See Batiste v. State,* 888 S.W.2d 9, 15 (Tex.Crim. App.1994); *Heard v. State,* 887 S.W.2d 94, 101 (Tex.App.—Texarkana 1994, pet. ref'd); *Davis v. State,* 884 S.W.2d 514, 518 (Tex. App.—Fort Worth 1994, pet. ref'd); *Williams v. State,* 834 S.W.2d 85, 87 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). The jury strikes lists show that there were

three Hispanic surnamed jurors who could have been reached. The State struck two of these jurors. Appellant struck one. No Hispanic surnamed jurors served on the jury. While appellant could have voiced a *Batson* objection, there is no evidence to show that counsel's failure to object was not based on his sound professional judgment or that a *Batson* violation, if any, prejudiced appellant's trial. There simply is no evidence to overcome the presumption that counsel performed adequately.

■ We also find no evidence in the record to establish that appellant was prejudiced by faulty translations. Appellant's trial attorney objected at trial to isolated, faulty translations, but never complained that the interpreter was inadequate or incompetent. Appellant has not shown through a developed record that his trial counsel erred by failing to request a new interpreter. In several instances, trial counsel objected to specific mistranslations and sought to correct them. Trial counsel proceeded correctly on the isolated instances of mistranslation. *See Garcia v. State,* 887 S.W.2d 862, 875 (Tex.Crim.App. 1994) (accuracy of single mistranslation should be impeached but must be settled by the trier of fact). Appellant has not shown from the record that a new interpreter was required or that the interpreter was providing an inadequate translation. Appellant offered no evidence to show that the interpreter's translations were incorrect or that he was incompetent. As there is no evidence to show that appellant's counsel was deficient, we overrule appellant's first point.

■ By point two, appellant contends that the trial court erred in refusing to instruct the jury on the law of his right to carry a weapon to the scene of the offense. The trial court charged the jury on self-defense but limited appellant's right to use self-defense as a justification for killing Torres by giving a "provoking the difficulty" charge.[2] TEX.PENAL CODE ANN. § 9.31(b)(4)

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. That portion of the charge instructed the jury that as a qualification of the law of self-defense, the use of force by a defendant against another is

not justified if the defendant provoked the other's use or attempted use of unlawful force. Specifically, the trial court instructed:

You are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant sought the meeting with de-

(Vernon 1994). When a trial court has charged on provoking the difficulty, the court must give a charge on the defendant's right to arm himself and seek an explanation, if raised by the evidence.[3] *Young v. State*, 530 S.W.2d 120, 122 (Tex.Crim.App.1975); *see Banks v. State*, 656 S.W.2d 446, 447–52 (Tex. Crim.App.1983). A charge on the "right to arm" is necessary when a charge on provoking the difficulty is given in order to prevent the jury from finding that the defendant was the provocator simply because he armed himself. *Longoria v. State*, 659 S.W.2d 857, 859 (Tex.App.—San Antonio 1983, no pet.).

The State's evidence showed that appellant got out of a car at a grocery store and walked up to Torres, who was talking to appellant's father in the parking lot. Appellant said nothing, pulled a gun from his pants, and shot at Torres twice. None of the witnesses saw Torres do anything to provoke appellant, and none saw Torres with a gun. No gun was found at the scene. Torres died from a gunshot wound to the neck.

Appellant testified and claimed self-defense. He testified that when he stopped at the store:

> My father—my dad was making some arguments with Mr. Torres and I asked him what was happening and then he charged over me and then he pull his coat outside—he had this pistol in his waist. The only thing I want to know is what was happening. Then, so, he charged over me; so I had to defend myself because I knew that he had a pistol with him.

Later appellant explained:

> He (Torres) had a blue coat with him. Open coat like this, because my father was talking to him; and I asked him, "Well what are—what do have? What is he up to?
>
> And then he pulled his coat this way, and I saw very clearly that he had a gun on his waist. That's exactly when I shoot at him.

Appellant claimed that Torres tried to pull a gun from his waist. With regard to appellant's intentions when he approached Torres and his father, appellant testified that he stopped at the grocery, "Just to ask him if he had a problem with my father." Appellant, who was on his way back from rabbit hunting when he passed the grocery store and stopped, testified that he had no intention of meeting Torres that day and had no way of knowing Torres would be at the store.

Appellant and various witnesses testified about threats and confrontations that had occurred between appellant and Ramon Torres over the years. There was evidence that Torres beat appellant in 1979, taunted appellant and threatened to kill or harm appellant and his father. The record does not establish when these other acts occurred. Appellant testified that he carried a gun because of the past events and threats. Appellant feared Torres, who he believed was a very dangerous man.

Appellant sought to have the jury charge contain the following instructions:

> You are instructed that if you find from the evidence that threats were made to defendant by deceased (or it was reported to defendant that deceased made such threats) to do defendant serious bodily harm or to take his life, then the defendant was attacked by the deceased with deadly force, or reasonably believed that he was being attacked by the deceased with deadly force, and shot deceased, or if you have a reasonable doubt thereof, then defendant's right of self defense would not be forfeited, and he could defend himself in accordance with the rules heretofore set forth in connection with the law of self defense.

ceased for the purpose of slaying deceased, and having found him, did some act, or used some language, or did both, with intent to produce the occasion and bring on the difficulty, and that the words and conduct of defendant, if any, under the circumstances, were reasonably calculated to provoke a difficulty, and did, and that on such account the deceased attacked him or attempted to attack him, and he then killed deceased in pursuance of his original design, if any there was, then the defendant cannot justify the killing on the ground of self defense, but such killing would be murder; but if you believe from the evidence that defendant had no such purpose in seeking the fatal meeting; or having it, did no act reasonably calculated to provoke the difficulty,

**3.** Effective September 1, 1994, the Texas Legislature abolished the common law "right to arm and seek a peaceful resolution." Tex.Penal Code Ann. § 9.31(b)(5) (Vernon 1994).

had the right to arm himself and seek out the deceased for an explanation thereof; and such conduct would in no way impair or abridge defendant's right of self defense.

You are instructed that defendant, on the occasion in question, had the right to seek out the deceased for an explanation of any threats which had been reported to defendant that deceased had made against defendant, and in so doing, the defendant had the right, under the law, to arm himself against any attack or threatened attack which the decease might make upon him.

The trial court refused to include these instructions. A defendant is entitled to an instruction on issues raised by the evidence. *Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974); *Ruiz v. State,* 747 S.W.2d 535 (Tex.App.—San Antonio 1988, pet. ref'd). We do not find any evidence to support the "right to arm" charges which appellant sought. While appellant testified about various threats and incidents which had occurred in the past, there is no evidence that appellant sought out Torres on the day of the offense for an explanation of Torres' threats to appellant or that appellant armed himself for the purpose of seeking any explanation. Viewed most favorably to appellant, the evidence shows that appellant, already armed, stopped to find out what was transpiring between his father and Torres. We conclude appellant was not entitled to the requested charges. Point two is overruled.

The judgment of the trial court is affirmed.