**Efrain Dwayne EPPS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–99–409–CR.**

Court of Appeals of Texas,
Corpus Christi.

July 6, 2000.

James M. Leitner, Houston, for Appellant.

Barbara Anne Drumheller,Asst. Dist. Atty., John B. Holmes, Jr., Dist. Atty., Houston, for State.

BEFORE: Justices HINOJOSA, CHAVEZ and RODRIGUEZ.

## OPINION

MELCHOR CHAVEZ, Justice.

This is an appeal from a conviction for the offense of aggravated robbery.[1] On April 9, 1999, a jury found appellant, Efrain Dwayne Epps, guilty and sentenced him to life in prison. Appellant raises seven issues for our review. We affirm.

According to the evidence presented by the State, appellant and two accomplices burglarized the home of Michael Gerow on July 22, 1998. Gerow's sixty-eight-year-old neighbor Donald Sparks witnessed suspicious behavior by appellant and his accomplices shortly before the burglary, and got his Sig Sauer .40 caliber semiautomatic pistol. He walked to the Gerow house and determined that he was witnessing a burglary. Shortly thereafter, Sparks was shot in the hip. He stood confused briefly, until appellant appeared, told Sparks that he was going to kill him, and took multiple shots at him from close range. Sparks was seriously injured by wounds inflicted by the close-range shots, including one wound in the head, but survived the inci-

---

1. Tex.Pen.Code Ann. § 29.03(a)(2) (Vernon 1994).

dent. Epps stole Sparks's gun when he left the scene.

▮ In his first two issues, appellant argues that the evidence presented at trial was factually and legally insufficient to support his conviction. In a factual sufficiency review, a reviewing court sets aside the verdict only if it is so contrary to the weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In a legal sufficiency review, the reviewing court views the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime as alleged in the indictment beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Williams v. State,* 937 S.W.2d 479, 482 (Tex.Crim.App.1996).

The indictment reads in its relevant part:

> Efrain Dwayne Epps ... in the course of committing theft of property owned by Donald Sparks and with intent to obtain and maintain control of the property, intentionally and knowingly [did] threaten and place Donald Sparks in fear of imminent bodily injury and death, and ... did then and there use and exhibit a deadly weapon, to wit: a firearm.

Appellant asserts that the State failed to show that Donald Sparks was the owner of the stolen property as alleged in the indictment. Sparks was a neighbor, not the owner of the house appellant entered. Sparks and Gerow, although neighbors, did not know one another. Sparks did not own anything in Gerow's house.

▮ Our constitution guarantees an accused the right to demand the nature and cause of the action against him, and to have a copy thereof. Tex. Const. art. 1, § 10. Everything that the State must prove should be in the indictment. Tex. Code Crim.Proc.Ann. art. 21.03 (Vernon 2000); *see State v. Mays,* 967 S.W.2d 404,

406 (Tex.Crim.App.1998). We look to the hypothetically correct jury charge when reviewing the sufficiency of the evidence used by a jury prove a crime alleged in an indictment. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). "[I]f allegations in an indictment are not descriptive of that which is legally essential to the validity of the indictment ... such unnecessary words or allegations may be rejected as surplusage." *McWilliams v. State,* 782 S.W.2d 871, 873 (Tex.Crim.App.1990). The identity of the owner of stolen property is not unnecessary surplusage. *See id.*

▮ The penal code definition of "owner" includes any "person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." Tex.Pen.Code Ann. § 1.07(a)(35)(A) (Vernon 1994). The State argues that Sparks had a greater right to Gerow's property than appellant, and thereby fits the penal code definition of "owner" of the property.

When the Legislature wrote the portion of the definition the State relies upon, it intended to expand the class of persons to be protected from theft and to allow the State to prove ownership without having to prove actual care, custody, control or management of the property. *Compton v. State,* 607 S.W.2d 246, 250–51 (Tex.Crim. App.1980). However, to our knowledge, this expansion of the definition of "owner" has never been construed so broadly as to allow a stranger to be the "owner" of property belonging to a third party. *Cf. Johnson v. State,* 606 S.W.2d 894, 896 (Tex.Crim.App.1980) (store security guard has a greater right to possess store property than an alleged thief); *Alexander v. State,* 753 S.W.2d 390, 391–93 (Tex.Crim. App.1988) (two friends who live in separate halves of a house split into a duplex and who visit each other regularly have a greater right to possess each other's property than an attempted burglar).

▮ Nonetheless, the State did provide the jury with legally sufficient evi-

dence to find appellant guilty of the aggravated robbery of Sparks. Making an inference in favor of the verdict, the jury could have reasonably concluded that appellant stole Sparks's pistol at the time he shot him. Circumstantial evidence is reviewed like direct evidence; the reviewing court determines whether any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983). A conviction based on circumstantial evidence does not require a "moral certainty [that] actually exclude[s] every hypothesis that the act was committed by another person," but may not be sustained if the circumstances only provide a strong suspicion of guilt. *Carlsen v. State,* 654 S.W.2d 444, 447 (Tex. Crim.App.1983).

■■■ "[U]nexplained possession of recently stolen property is a circumstance of guilt in a prosecution for robbery." *Girard v. State,* 631 S.W.2d 162, 163 (Tex. Crim.App.1982); *see Batiste v. State,* 464 S.W.2d 149, 151 (Tex.Crim.App.1971). Sparks had in his possession a Sig Sauer .40 caliber semiautomatic pistol at the time of the incident. The same Sig Sauer .40 caliber semiautomatic pistol was found in appellant's possession less than three weeks later. The taking of Sparks's pistol was only possible because of appellant's assault immediately before the theft. This is circumstantial evidence that a reasonable person could use to conclude that the appellant stole Sparks's pistol at the time of the shooting, and to determine that appellant committed aggravated robbery.

The timing of appellant's decision to take Sparks's pistol here must also be proven by circumstantial evidence in order to show that appellant had the requisite intent to commit aggravated robbery. Texas courts have generally not looked at the issue of proving the timing of intent to commit a crime by circumstantial evidence in the context of the offense of aggravated robbery. But *see Watson v. State,* 154 Tex.Crim. 438, 227 S.W.2d 559, 562 (1950)

("When the taking [is] made possible by an antecedent assault, the offense is robbery.") (citing *Alaniz v. State,* 147 Tex. Crim. 1, 177 S.W.2d 965, 966–67 (1944) (Defendant who rendered victim unconscious after victim made insulting remarks and then took victim's wallet found guilty of robbery)); *Stebbing v. State,* 299 Md. 331, 351–356, 473 A.2d 903, 912–915 (1984) (detailed discussion of the determination of intent in cases proven by circumstantial evidence).

The court of criminal appeals instructs that "proof of a robbery committed as an afterthought and unrelated to a murder [will] not provide sufficient evidence of a capital murder[.]" *Moody v. State,* 827 S.W.2d 875, 892 (Tex.Crim.App.1992). The issue in this case is whether the theft was an afterthought and unrelated to an aggravated assault.

■■■ The State may prove any element of its case with circumstantial evidence. *Indo v. State,* 502 S.W.2d 166, 168 (Tex.Crim.App.1973); *Meyers v. State,* 737 S.W.2d 6, 8 (Tex.App.—Corpus Christi 1987, no pet.). The State presented evidence that in the course of stealing from Gerow, appellant attacked and stole a gun from Sparks. Viewing this evidence in the light most favorable to the jury's verdict, a rational trier of fact could determine beyond a reasonable doubt that appellant's intent to steal Sparks's pistol was not unrelated to his intent to attack Sparks. *See Moody,* 827 S.W.2d at 892. We therefore reject appellant's attack on the legal sufficiency of the evidence.

■■■ We also reject appellant's factual sufficiency of the evidence claim. Evidence against appellant included eyewitness identifications, fingerprint evidence in Gerow's house, Sparks's pistol in appellant's possession less than three weeks after the incident, and incriminating statements made by appellant himself. In light of this evidence, the jury's verdict was not so contrary to the overwhelming weight of

the evidence that we should reverse it for factual insufficiency.

▮ In his third issue, appellant complains of the admission of letters he wrote from jail. These letters were admitted at the punishment stage of the trial. The defense argued that there was no proof that Epps wrote the letters, and that the general profanity and "rap gangster street talk" of the letters render them more unfairly prejudicial than relevant except to the extent that they establish Epps's gang membership or to establish an admission against penal interest. We consider this objection to be as to the prejudicial effect the letters would have on the jury.

Appellant argues that the "street language" patois used in the letters was used by the State to portray him as incorrigibly violent and racist. Appellant asserts that these letters were used by the prosecution in a continuation of a traditional use of cultural stereotypes and racism against non-whites in the American judicial system. He further argues that the use of these letters is a violation of the Fourteenth Amendment's general prohibition of government use of suspect classification as a basis for discriminating between individuals.[2] The Supreme Court has instructed that, "[t]he Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of State is most compelling in the judicial system." *Powers v. Ohio*, 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

▮ The language used by appellant, when transferred into a foreign cultural context, could potentially prejudice a juror not familiar with it. In his letters, appellant routinely used extremely profane words, such as "whore," "n____" and "b____," that reduce people to a subhuman level. Appellant's callous and vulgar personal expression in his letters also appears to be a self-portrayal of an extremely violent person who places no value on the lives of other people. When the jurors looked at appellant's violent and dehumanizing diction in the letters, any number of stereotypical caricatures of African–American males could have affected their judgement. When racial bias is likely to influence a jury, an inquiry must be made into such bias. *Ristaino v. Ross*, 424 U.S. 589, 596, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976). The same jurors, however, heard detailed testimony about the act appellant committed, and about an extreme lack of remorse that he appeared to have after committing the act. In light of the overwhelming evidence of appellant's guilt and insensitivity to the victims of his crime, we find that any possible error caused by any possible racial bias that was provoked by appellant's letters is harmless. Tex. R.App.P. 44.2(a).[3] We reject appellant's third issue.

**2.** We assume that appellant's argument is that the prosecution used the letters to discriminate against people who are black, and not to discriminate against the more diverse group of people who use street language.

**3.** Under Texas Rule of Appellate Procedure 44.2, only certain federal constitutional errors labeled by the United States Supreme Court as "structural" are categorically immune to reversible error analysis. *Salinas v. State*, 980 S.W.2d 219, 219 (Tex.Crim.App.1998). Structural error exists when a defect at trial affects the framework within which the trial proceeds, as opposed to error within the trial process itself. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. "A structural error requires automatic reversal and is not subject to harmless error analysis because it involves a deprivation of a constitutional protection so basic that in its absence, 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *Bentley v. Scully*, 41 F.3d 818, 823 n. 1 (2nd Cir.1994) (citing *Arizona v. Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246). The Supreme Court "has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless. *Fulminante*, 499 U.S. at 306, 111 S.Ct. 1246. The Supreme Court has never classified the use of evidence that could conceivably prejudice a juror as structural error. Non-structural constitutional errors require reversal of the trial court's judgment unless the reviewing court determines beyond

In his fourth issue, appellant complains that his rights under the confrontation clause of the Sixth Amendment were violated when the trial court allowed the State to admit letters written to him by Chauncey Moore while both of them were in jail. Moore was one of the other two individuals who broke into Gerow's home with appellant. Appellant characterizes Moore's letters as "nontestifying accomplice testimony" and relies on *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) as support for his argument.

In *Lilly*, the prosecution called an accomplice to testify against a defendant. *Id.* at 121, 119 S.Ct. 1887. The accomplice invoked his Fifth Amendment right against self-incrimination and refused to testify. *Id.* at 121, 119 S.Ct. 1887. The prosecution then offered to introduce an entire confession that inculpated the accused in the charged offense that the accomplice made to the police after his arrest, arguing that the statements were declarations against penal interest by an unavailable witness. *Id.* at 121–22, 119 S.Ct. 1887. The trial court admitted the evidence over the defendant's objection. *Id.* at 122, 119 S.Ct. 1887. The Supreme Court determined that this was a violation of the confrontation clause. *Id.* at 139, 119 S.Ct. 1887.

We find *Lilly* distinguishable from the present facts. Moore's letters did make reference to a gang which runs a small drug operation in the neighborhood in which Moore and appellant lived. However, these references did not harm appellant because his gang membership was already established by the admission of his own letters against him. Tex.R.App.P. 44.2(b).[4] Moore's letters confessed to no crime, nor did they inculpate appellant in

the State's case against him. We therefore find that *Lilly* does not apply to appellant's case and reject his fourth issue.

In his fifth issue, appellant contends that the trial court erred by admitting the testimony of the State's fingerprint expert. Expert testimony in areas that are based primarily upon experience and training, as opposed to the scientific method, may be established as reliable evidence if: 1) the field of expertise involved is a legitimate one, 2) the subject matter of the expert's testimony is within the scope of that field, and 3) the expert's testimony properly relies upon or utilizes the principles involved in that field. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000); *Nenno v. State*, 970 S.W.2d 549 (Tex.Crim.App.1998). However, once a particular type of scientific evidence is well established as reliable, a court may take judicial notice of that fact, thereby relieving the proponent of the burden of producing evidence on that question. *Weatherred*, 15 S.W.3d at 542; *Emerson v. State*, 880 S.W.2d 759, 764 (Tex. Crim.App.1994). Likewise, a court may take judicial notice of the validity of the technique applying that principle. *Emerson*, 880 S.W.2d at 764. An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review. *Weatherred*, 15 S.W.3d at 542; *Prystash v. State*, 3 S.W.3d 522, 527 (Tex.Crim.App. 1999).

The trial court heard evidence concerning the experience and work history of an expert, as well as his explanation of the techniques and processes involved in fingerprint identification. The testimony of a fingerprint expert identifying a defendant's fingerprints has long been sanctioned by the court of criminal appeals.

---

a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App.P. 44.2(a). Non-constitutional errors require reversal only if the error affects a substantial right of the defendant. Tex. R.App.P. 44.2(b).

4. The Supreme Court has not determined that references to gang membership is structural error. Involuntary confessions are not structural error. *Fulminante* at 1265, 111 S.Ct. 1246. *See* discussion *supra*, note 3.

*Miller v. State,* 472 S.W.2d 269, 272 (Tex. Crim.App.1971); *Johnson v. State,* 435 S.W.2d 512, 513 (Tex.Crim.App.1969); *Grice v. State,* 142 Tex.Crim. 4, 151 S.W.2d 211, 211 (Tex.Crim.App.1941); *Nieto v. State,* 767 S.W.2d 905, 908 (Tex.App.—Corpus Christi 1989, no pet.). The trial court was permitted to combine this testimony with knowledge of the general acceptance of fingerprint identification as a specialized field and determine that the *Weatherred* requirements were met. We overrule appellant's fifth issue.

In his sixth issue, appellant claims that the trial court erred when it allowed the hearsay testimony of one witness's daughter at the guilt stage of the trial. Elizabeth Cisneros testified that immediately following the shooting, her nine-year-old child was extremely upset, and told her mother, "I saw them. I saw what they did. They shot the man, mommy." Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted. Tex .R.Evid. 801(d). Hearsay is not admissible except as provided by statute or the rules of evidence. Tex.R.Evid. 802. The Texas Rules of Evidence expressly allow for the admission of an excited utterance. Tex.R.Evid. 803(2). This rule is based on the proposition that statements which are made during an exciting event are trustworthy enough to fall outside the rule against hearsay. *Parks v. State,* 843 S.W.2d 693, 697 (Tex.App.—Corpus Christi 1992, pet. ref'd). The indicia of trustworthiness is based on the declarant's lack of an opportunity to fabricate, and the involuntariness of the statement. *Id.* The critical factor is whether the declarant is still dominated by the emotions arising from the exciting event. *Hawkins v. State,* 792 S.W.2d 491, 495 (Tex.App.—Houston [1st Dist.] 1990, no pet.). Here, the child's statements plainly qualify as an excited utterance.

Appellant also complains of the testimony of Houston Police Department Sergeant Michael Rivera regarding a lineup conducted after appellant and his co-defendants were arrested. Rivera was asked whether Elizabeth Cisneros's daughter was able to identify anyone in the lineup. Appellant did not object, but had earlier in the record asked the judge if "in the future, ... one of us objects can we take it as an objection from all of us unless we say otherwise?" The judge granted this request. A defendant may not ordinarily rely upon an objection of a co-defendant to preserve error. *Lerma v. State,* 679 S.W.2d 488, 498 (Tex.Crim.App.1982). Although a review of the record shows that defense counsel and counsel for appellant's co-defendants expressly adopted objections in which they wanted to join, in light of the judge's approval of trial counsel's request, and an objection made by counsel of one of appellant's co-defendants, the trial court should not have admitted this testimony into evidence against appellant. However, Sergeant Rivera testified that the girl did not identify appellant at the lineup; she instead identified one of appellant's co-defendants.

The record as a whole provides this court with a fair assurance that the testimony did not have more than a slight effect on the jury's verdict. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim. App.1998). Fingerprint evidence placed appellant in Gerow's home, he was arrested with Sparks's pistol, and he was positively identified by Sparks as the man who shot him. Reversible error may not be predicated upon a ruling that admits evidence unless a substantial right of the accused is affected. Tex.R.App.P . 44.2(b).[5] A substantial right is affected when the error has a substantial injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Therefore, appellant was not harmed by the admission of this testimony. We overrule his sixth issue.

5.   *See* discussion of rule 44.2 *supra* note 3.

In his seventh issue, appellant argues that he received ineffective assistance of counsel during trial because his trial counsel failed to object to testimony about gangs by members of law enforcement. Appellant claims that there was no evidence that the officers who testified about appellant's gang membership had any specialized training or other background to support their testimony. They testified as to certain gang activities, the significance of appellant's tatoos, and the significance of some of the language of the letters admitted at trial.

The United States Supreme Court and the Texas Court of Criminal Appeals have promulgated a two-prong procedure to determine whether representation was so inadequate that it violated the defendant's Sixth Amendment right to counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 54–55 (Tex.Crim.App.1986). First, trial counsel's performance must fall "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. This deficiency must be of the extent that counsel failed to function as counsel. *Yates v. State,* 917 S.W.2d 915, 920 (Tex.App.—Corpus Christi 1996, pet. ref'd.). Secondly, the appellant must prove that "the deficient performance prejudiced the defense" by "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 686, 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700, 104 S.Ct. 2052.

The burden of proving ineffective assistance of counsel is on the appellant by a preponderance of the evidence. *Stafford v. State,* 813 S.W.2d 503, 506 (Tex. Crim.App.1991). The defendant must overcome a strong presumption that coun-

sel's performance fell within the wide range of reasonable professional assistance. *Tijerina v. State,* 921 S.W.2d 287, 289 (Tex.App.—Corpus Christi 1996, no pet.). There is no indication in the record regarding the reasons appellant's attorney may have had for refraining from objecting to the gang evidence. *See Thompson v. State,* 9 S.W.3d 808 (appellant must present direct evidence of trial counsel's subjective motivations in order to overcome the presumption of reasonable conduct). To find appellant's counsel ineffective on the basis of the record before this Court would require speculation. We therefore overrule appellant's seventh issue.

We AFFIRM the judgment of the trial court.