NUMBER 13-02-636-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ROGER MORGAN WALL, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 338th District Court of Harris County, Texas.


 


OPINION ON REMAND



Before Justices Yañez, Rodriguez, and Garza


Opinion On Remand by Justice Yañez


 

 This case is before us on remand from the Texas Court of Criminal Appeals. A jury
found appellant, Roger Morgan Wall, guilty of aggravated assault and assessed
punishment at confinement for thirty-five years. By two issues, appellant asserted that the
trial court erred in (1) overruling his objection to jury argument raised during the
prosecutor's closing statement, and (2) allowing a police officer to testify about one of the
assault victim's out of court statements made during a hospital interview. On original
submission, this Court held that no error was preserved for appeal as to the first issue. (1) 
As to the second issue, we held that admitting the statements under the excited-utterance
exception to the hearsay rule violated the Sixth Amendment under the standard announced
in Crawford v. Washington, 541 U.S. 36 (2004). (2) We found, however, that the error was
harmless because the properly admitted evidence included testimony from three different
eyewitnesses that appellant, without provocation, struck the complainant and several
others with a board. (3)

 Petition for discretionary review was granted to determine whether appellant's
confrontation rights were in fact violated, and if so, whether that violation was harmful. The
court of criminal appeals agreed with the findings of this Court and affirmed appellant's
conviction, but remanded the case because we did not address whether the Crawford
violation was harmful at the punishment stage. (4) We now address this remaining issue, and
affirm the judgment of the trial court.

Background

 On December 31, 2001, a group of homeless men gathered at an abandoned gas
station to celebrate the approach of the new year. Appellant, who sometimes drank with
these men, wandered over to visit with them. At some point during the afternoon, appellant
picked up a board and beat several of the men. Two of the men, Samuel Pierce and
Donald Norman, were severely injured and taken by ambulance to a nearby hospital. 
While in the emergency room, both were questioned by Deputy Luis Figueroa.

 Appellant was charged with the aggravated assault of Pierce. At trial, Pierce
testified that on the afternoon of New Year's Eve he was at a Shell station drinking with a
few people, including appellant, whom he knew only as "Roger." At some point "[a] bottle
got broke against the wall and things started being said." Pierce said that appellant was
behind him, and the next thing he knew, he was hit in the head a couple of times with a
two-by-four board. When he put up his arm in self-defense, appellant hit his arm. Pierce's
injuries included a cut on his head that required stitches, a fractured nose, and a broken
arm that required "a lot of surgeries to put it back together." Pierce said that, as far as he
knew, nobody had said or done anything to appellant to provoke the beating. Norman did
not testify. Instead, the State called Deputy Figueroa to testify as to what Norman told him
at the hospital. The State's direct-examination of Deputy Figueroa produced the following
exchange:

 Q: What did [Norman] tell you?


 A: He told me they were drinking and--Mr. Pierce, Mr. Thomas and the
defendant were drinking at the old gas station when the defendant
said, "I hate niggers, I hate Mexicans."


 Q: What did--what happened after that?


 . . . .


 A: Mr. Norman stated he told the defendant, "I like all races and I served
this country for all races."


 Mr. Norman then told me that the defendant got angry and
said, "You're a nigger lover," at which time he walked over to the bed
of a truck and retrieved a club and came back to him and started to
assault him, began assaulting him with the club.


 Appellant claims that this testimony was admitted in violation of his right to
confrontation under the Sixth Amendment and that it harmed him during the punishment
stage of his trial. In his supplemental brief, appellant poses the following argument:

 A person's character is before the jury during the punishment phase and
normally is the essential factor in assessing a sentence. These statements
indicate a racial intolerance and bigotry on the part of Wall. Wall was unable
to test the hearsay statements through proper cross-examination in which he
might have been able to show the statements to be false and a slander on
his reputation. Finally while these statements are offensive to all races they
are even more so to those individuals who are Hispanic or African-American. 
As the jury panel contained three member [sic] of the targeted race, this
Court cannot say that the statements did not affect the jurors in assessing
punishment.


Applicable Law

 Because appellant's complaint touches on the constitutionally protected right of
confrontation, we must examine the potential harm under a heightened standard. (5) Texas
Rule of Appellate Procedure 44.2(a) states that in reviewing constitutional error for harm,
the court must reverse unless it determines beyond a reasonable doubt that the error did
not contribute to the conviction or the punishment. (6) In other words, we must determine
"whether, after examining the record as a whole, there is a reasonable possibility the
evidence complained of might have contributed to appellant's punishment." (7) To conduct
a proper harm analysis, a reviewing court should consider (1) the source of the error, (2)
the nature of the error, (3) whether or to what extent it was emphasized by the State, (4)
the probable collateral implications of the error, (5) how much weight a juror would probably
place upon the error; and (6) whether declaring the error harmless would encourage the
State to repeat it with impunity. (8) By entertaining these matters, we derive an answer to the
primary question before us: can the State, as beneficiary of the error, persuade us to a
level of confidence beyond a reasonable doubt that the error made no contribution to
appellant's punishment? (9)

Discussion

 In the instant case, the source and nature of the error were the trial court's
erroneous admission of Norman's custodial statement through Deputy Figueroa. Norman's
statement complemented the testimony of three other witnesses, each of whom testified
that appellant, unprovoked, struck several victims with what was described as being either
a club, stick, or board; it also provided the State's only theory as to appellant's motivation
for the assault.

 The State did not emphasize the testimony in question; it made no attempt to
portray appellant as a racist. Furthermore, at the time the error was committed, "'the case
law in this nascent field [was] muddled as to whether excited utterances may or may not
be classified as testimonial hearsay.'" (10) The court of criminal appeals has since
unequivocally held that a testimonial "statement that also qualifies as an excited utterance
exception under the Texas hearsay rule does not alter its testimonial nature." (11) In light of
this holding, and because our harmless error determination is guided by the specific facts
of this case, we do not believe that declaring the error harmless would encourage the State
to repeat the error with impunity.

 In assessing the probable collateral implications of the error and the weight a juror
would probably place upon the error--in terms of punishment assessment--this Court's
holding in Epps v. State (12) is particularly instructive. In Epps, the defendant and two
accomplices burglarized a home. During the commission of the burglary, an elderly
neighbor walked to the home and determined that he was witnessing a burglary. Shortly
thereafter, the neighbor was unexpectedly shot; the defendant then appeared before the
neighbor, told him that he was going to kill him, and took multiple shots at him from close
range. After being convicted for aggravated robbery, the defendant appealed to this Court,
complaining that letters he wrote from jail were erroneously admitted during the
punishment stage of trial. (13) The defendant complained that the letters were "used by the
State to portray him as incorrigibly violent and racist." (14)

 The Court noted that in these letters, "[the defendant] routinely used extremely
profane words, such as 'whore,' 'n-----' and 'b----,' that reduce people to a subhuman
level. . . . When the jurors looked at [the defendant's] violent and dehumanizing diction in
the letters, any number of stereotypical caricatures of African-American males could have
affected their judgment." (15) The Court further noted, however, that the same jurors "heard
the detailed testimony about the act [the defendant] committed, and about an extreme lack
of remorse that he appeared to have after committing the act." (16) The Court then held that
"[i]n light of the overwhelming evidence of [the defendant's] guilt and insensitivity to the
victims of his crime . . . any possible error caused by any possible racial bias that was
provoked by [the defendant's] letters [was] harmless." (17)

 In the instant case, appellant's punishment was governed by section 12.42 of the
penal code, which sets out punishment ranges for repeat and habitual felony offenders. (18)
 
The jury was free to assess punishment anywhere between 25 years to life in prison. 
Appellant, who pleaded "true" to his previous convictions for burglary of a motor vehicle
and injury to a child, received a 35 year sentence.

 As in Epps, the jury in this case was shown overwhelming evidence of appellant's
guilt and his insensitivity to the victims of his crime. Multiple witnesses testified that it
appeared as if appellant committed the assault without provocation. One witness, Jerry
Hunter, testified to seeing appellant assault five individuals. He stated that he saw
appellant and five other individuals engaged in what appeared to be an argument. 
Appellant grabbed what appeared to be a two-by-four board and used it to strike the head
of an individual who was standing; appellant struck the individual again after he fell to the
floor. Appellant struck a second individual in the head, breaking the board in half in the
process and seemingly knocking that person unconscious. A third individual, who was on
crutches and had one leg, was struck by appellant, presumably with his hands, and pushed
to the floor. Appellant then turned his attention to two other individuals who were sitting;
appellant punched and kicked them, striking their heads and upper chests. The individuals
attacked were described as being "a lot smaller" physically than the defendant, and
appearing "much older" in age. Hunter also stated that during the attack, it appeared as
if the assaulted individuals were trying to "calm the situation," "get the situation to stop,"
and back away from appellant. Consequently, in light of the overwhelming evidence of
appellant's guilt and insensitivity to the victims of his crime, we find that any possible racial
bias that was provoked by Deputy Figueroa's testimony was harmless. (19) The probable
impact of this erroneously admitted testimony on the jury was minimal, if any.

 After carefully reviewing the record in light of the Harris factors, we are certain that
a rational trier of fact would have reached the same result even if the error and its effects
had not resulted. (20) Accordingly, we find beyond a reasonable doubt that the alleged error
did not contribute to appellant's punishment; therefore, admission of the complained-of
evidence was harmless. (21)

Conclusion

 The judgment of the trial court is affirmed.



 

 LINDA REYNA YAÑEZ,

 Justice






Publish. Tex. R. App. P. 47.2(b).


Opinion on Remand delivered and filed 

this the 21st day of February, 2008.

1. Wall v. State, 143 S.W.3d 846, 849 (Tex. App.-Corpus Christi 2004), aff'd and remanded, 184
S.W.3d 730 (Tex. Crim. App. 2006).
2. Id. at 851-53.
3. Id.
4. Wall, 184 S.W.3d at 746-47 (recognizing that "[i]n some situations, the admission of testimonial
statements that are harmless beyond a reasonable doubt at the guilt stage might well have a demonstrable
impact at the punishment stage").
5. See Chavez v. State, 6 S.W.3d 56, 63 (Tex. App.-San Antonio 1999, pet. ref'd) (analyzing issue
under Rule 44.2(a) of the Texas Rules of Appellate Procedure); Wilson v. State, 948 S.W.2d 21, 30 (Tex.
App.-Eastland 1997, pet. ref'd) (analyzing issue under former Rule 81(b)(2), the predecessor to 44.2(a)).
6. Tex. R. App. P. 44.2(a).
7. Bell v. State, 948 S.W.2d 535, 540 (Tex. App.-Beaumont 1997, pet. ref'd).
8. Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).
9. See Miles v. State, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996).
10. Wall, 184 S.W.3d at 740 (quoting United States v. Brito, 427 F.3d 53, 60 (1st Cir. 2005)). 
11. Id. at 745.
12. Epps v. State, 24 S.W.3d 872, 875 (Tex. App.-Corpus Christi 2000, pet. ref'd).
13. Id. at 878.
14. Id.
15. Id.
16. Id.
17. Id.
18. See Tex. Penal Code Ann. § 12.42 (Vernon 2003) ("[I]f it is shown on the trial of a felony offense
. . . that the defendant has previously been finally convicted of two felony offenses, and the second previous
felony conviction is for an offense that occurred subsequent to the first previous conviction having become
final, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department
of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.").

19. See Epps, 24 S.W.3d at 878.
20. See Harris, 790 S.W.2d at 588.
21. See Tex. R. App. P. 44.2(a).