

# NUMBER 13-17-00054-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**HERIBERTO SAENZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

## On appeal from the 347th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant Heriberto Saenz challenges his convictions for murder and three aggravated assaults, first and second-degree felonies.[1]  *See* TEX. PENAL CODE ANN. §§ 19.02, 22.02 (West, Westlaw 2017 through 1st C.S.).   By three issues, Saenz challenges

---

[1]  This is Saenz's second trial in this matter.   Saenz was convicted in the 2010 original trial.   His conviction was reversed in post-conviction proceedings and remanded to the trial court for a new trial.

the admission of hearsay, the sufficiency of the evidence, and argues that his trial counsel provided ineffective assistance when he failed to impeach a witness with prior testimony. We affirm.

## I. BACKGROUND

On the evening of September 30, 2009, a group of people were gathered outside a residence at 1112 Sabinas Street in Corpus Christi according to trial testimony by several witnesses. At approximately 11:00 p.m. a red truck drove past the residence. The driver of the truck shot ten or more rounds of ammunition into the crowd, killing seventeen-year-old Claryssa Silguero, and wounding three men. Jerry Gonzalez, one of the injured men, later testified that Saenz was the driver of the truck. Several other witnesses testified that the shooting took place but could not identify the truck's driver. Gonzalez also testified that the shooter said, "hey Debo," and "S.B." while at the scene. Ms. Silguero's nickname was Debo.

Over the course of the next two days the Corpus Christi Police Department (CCPD) developed information that the shooting was gang related and that Saenz was the shooter in the red truck. Saenz denied any involvement. He offered an alibi that he was at the Century 16 theater watching "Jennifer's Body," and spent the night with his girlfriend, fifteen-year-old Rebecca Mills. Saenz admitted that he was a member of a gang, Suicidal Barrios, or "S.B." Mills testified that Saenz called her at school the afternoon of October 1, 2009 and told her to leave school. Saenz told her there had been a shooting and he was concerned for her safety because of possible retaliation. On October 2, Mills told the investigating detectives that she did not see Saenz on September 30, 2009. But

2

the next day Mills went back to the police station with her mother and admitted that Saenz arrived at her house after 11:30 the night of September 30, 2009 and left the next morning before 8:30. Mills testified that Saenz asked to spend the night of September 30 at her house and she agreed, but told him he could not come over until after her mother went to sleep. Saenz told her he was going to a movie on September 30 to kill some time until then.

Saenz made a number of calls the night of September 30, 2009. He spoke to and texted Heather Velasquez. Velasquez testified to a conversation with Saenz in which Saenz said he was going to "hit up Quare hood."[2] Velasquez asked him why and Saenz responded that "he had to do what he had to do." During that same conversation, Velasquez believed she heard the sound of a gun being cocked or a round being chambered.

CCPD Detectives Guadalupe Rodriguez and R.L. Garcia performed much of the investigation. Detective Rodriguez testified that during her investigation she became aware of a melee at the Taco Bell across from Ray High School a week or ten days before the shooting. The melee involved members of La Quarenta and Suicidal Barrios. Mills attended Ray High School and two or three days a week, she met Saenz there after school. The afternoon of the melee, Saenz was at Taco Bell in his red truck to pick up Mills after school. When the melee began he took her away and did not get involved, although members of La Quarenta were taunting him.

---

[2] Quare refers to a neighborhood of forty streets that includes the shooting location on Sabinas Street and refers to a gang from that neighborhood also known as La Quarenta.

Agent Ben Teed, a former CCPD officer who worked for Homeland Security at the time of trial, analyzed Saenz's cell phone activity between ten p.m. and midnight on September 30. Teed testified that Saenz's cell phone was bouncing off a cell tower near the movie theater around 10:30 p.m. According to Agent Teed, twenty-six seconds after the first 911 call regarding the shooting, Saenz called Mills and three minutes later Mills called Saenz. Saenz's call to Mills picked up the cell tower closest to the shooting location and when the call ended, his phone picked up a tower south of the shooting. In addition, Agent Teed testified that several of Saenz's phone calls right before and right after the shooting were placed to known Suicidal Barrios' gang members. Saenz's truck was spotted at an apartment complex where one of these gang members lived on October 1, 2009, after he left Mills's home.

The defense cell phone expert testified that the initial tower for a call on the GSM network that T-Mobile, Saenz's carrier, used is generally the closest cell tower. However, he also testified that once the call is picked up by the network, the cell tower involved is not necessarily the nearest tower but is chosen by the GSM network. After the initial tower, according to the defense expert, the tower location does not necessarily have any relationship to the physical location of the cell phone. He had other criticisms of Agent Teed's methodology and conclusions, but he agreed with Agent Teed that at the time of the shooting, Saenz's cell phone was not near the cell towers close to Century 16 theater.

Detective R.L. Garcia testified that the gun used in the September 30, 2009 shooting was recovered on October 4, 2009, from Kelan Oliver. The gun was used in a

4

shooting on October 2, 2009, after Saenz was arrested and was in custody. Oliver told the police officers that he bought the gun on the street within a week before he was arrested, but he did not know the date. Detective Rodriguez's investigation of the gun's whereabouts led her to believe that the gun was sold to Oliver by a man who was affiliated with the Suicidal Barrios gang.

The jury convicted Saenz on all four counts: murder and three aggravated assaults. Saenz was sentenced to sixty-five years' imprisonment for murder and to ten years' imprisonment for each of the three aggravated assaults, all to be served concurrently in the Texas Department of Criminal Justice—Institutional Division.

## II. SUFFICIENCY OF THE EVIDENCE

In his second issue on appeal, Saenz challenges the sufficiency of the evidence to support his convictions.

### A. Standard of Review

The Court applies the sufficiency standard from *Jackson v. Virginia*, which requires the reviewing court to "view[] the evidence in the light most favorable to the prosecution," to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. 307, 319 (1979) (emphasis in original)); *see also Williams v. State*, No. 03-11-00598-CR, 2013 WL 6921489 at *6 n.10 (Tex. App.— Austin Dec. 31, 2013, pet. ref'd) (mem. op., not designated for publication). When a reviewing court views the evidence in the light most favorable to the verdict, it "is required to defer to the jury's credibility and weight determinations because the jury is the *sole*

5

judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899 (emphasis in original). "The reviewing court must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). If the record supports conflicting inferences, we presume that the fact finder resolved the conflict in favor of the prosecution and defer to that resolution. *Garcia v. State*, 367 S.W.3d 684, 686–87 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

Evidence is insufficient under the *Jackson* standard in four circumstances: 1) the record contains no evidence probative of an element of the offense; 2) the record contains a mere "modicum" of evidence probative of an element of the offense; 3) the evidence conclusively establishes a reasonable doubt; and 4) the acts alleged do not constitute the criminal offense charged. 443 U.S. at 314, 318 n.11, 320. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982); *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

**B.     Discussion**

The shooting at 1112 Sabinas Street happened at approximately eleven o'clock p.m. on September 30, 2009. According to Saenz's statements to Detectives Rodriguez and Garcia, he was at a showing of "Jennifer's Body" at Century 16 movie theater on the southside of Corpus Christi and arrived at Mills's house at 11:30 where he spent the night. Mills's testimony confirmed that he arrived at her house around 11:30 that night. The

6

Court admitted Saenz's movie ticket that reflects that the movie began at 10:35 p.m. Century 16 provided videotape of the hallway leading to Theater 15 where "Jennifer's Body" was being shown. Detective Michael Ilse with the CCPD works for Century 16 as its head of security. He testified that he obtained three of the various surveillance tapes from the night of September 30, 2009 and viewed them at the request of the investigating detectives. The tapes were admitted at trial. A man who could have been Saenz is seen walking down the hallway towards Theater 15. That same man is also seen walking away from Theater 15 in the hallway at 10:37 p.m. The same man did not go back down the hallway to Theater 15 before 11:00 p.m. Detective Ilse also testified that there are exits to outside in the hallway that do not require a patron to exit through the theater lobby.

Gonzalez testified that he picked Saenz's face out of a photo array on October 2, 2009, less than forty-eight hours after the shooting. His selection was not recorded on the videotape statement taken from him that day by Detectives Garcia and Rodriguez. Each detective explained that Detective Rodriguez was still setting up the equipment when Gonzalez picked Saenz's photo from the array. Gonzalez also testified that he saw a vehicle turn from Buford Street onto Sabinas and noticed that the driver turned off his headlights. Gonzalez described the vehicle as a red Ford truck. The driver pulled the truck closer to the curb than to the center of the street and began shooting out the driver's side window. Gonzalez heard the driver say, "Hey, Debo" before he started shooting and said "S.B." The next morning, CCPD Detectives Guadalupe Rodriguez and R.L. Garcia visited Gonzalez in the hospital. Gonzalez testified that he had a shot of

7

morphine right before he spoke to them. He told the detectives that morning that the truck was a red Ford and that he could not identify the driver. The detectives came back the next day and showed him a photo array. He explained to the jury that when he saw the photos, he recognized the shooter, Saenz. Gonzalez denied that the detectives influenced his choice of photo. Gonzalez also made an in-court identification of Saenz as the shooter.

Bo Villarreal testified that he had a conversation with Saenz while both were in the Nueces County jail in mid-October 2009 in which Saenz told Villarreal that he "did a shooting" of some people including a female named Debo in the Quare. Saenz's friend Velasquez testified that she was on the phone and texting with Saenz after ten p.m. on September 30, 2009, and he told her he was going to "hit the Quare hood." Velasquez also thought she heard a round being chambered in a gun while she was talking to Saenz.

Although there was evidence that no one who was present on Sabinas Street that night could identify Saenz other than Gonzalez, one witness described the red truck with a Z71 on its rear side panel (which meant it was a Chevrolet, not a Ford), and the gun was not recovered in Saenz's possession, the jury resolved the contradictory evidence in favor of conviction. *See Garcia*, 367 S.W.3d at 686–87. We hold that the evidence is sufficient to support Saenz's conviction for the murder of Claryssa Silguero, and the aggravated assaults on Jerry Gonzalez, Charles Castillo, and Jose Azua. We overrule Saenz's second issue.

8

### III. HEARSAY

Saenz's first issue challenges the admission of his statement on the telephone to Velasquez that he was going to "hit up Quare hood." The statement came in through Velasquez's testimony over defense counsel's hearsay objection. The trial court overruled the objection.

#### A. Standard of Review

Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by statute or the rules of evidence. TEX. R. EVID. 802. An appellate court reviews a trial court's evidentiary ruling for abuse of discretion and will not reverse that decision absent an abuse of discretion. *See Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005*); Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Epps v. State*, 24 S.W.3d 872, 879 (Tex. App.—Corpus Christi 2000, pet. ref'd). "The trial court abuses its discretion when [its] decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

#### B. Discussion

Although hearsay is an out-of-court statement, hearsay does not include the statement of a party opponent even though the statement was made out of court. TEX. R. EVID. 801(e)(2)(A); *Hughes v. State*, 4 S.W.3d 1, 6 (Tex. Crim. App. 1999) ("A statement qualifies as an admission by party opponent if it is offered against a party and it is the party's own statement."); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App.

1999) ("The State correctly argues that Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."). "A party's own statements are not hearsay and they are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Trevino*, 991 S.W.2d at 853; *see also Alcala v. State*, 476 S.W.3d 1, 23 (Tex. App.—Corpus Christi 2013, pet. ref'd).

Because Saenz's statement to Velasquez is defined as not hearsay, it was admissible. TEX. R. EVID. 801(e)(2)(A) The trial court did not abuse its discretion by admitting the statement. We overrule Saenz's first issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Saenz's third issue complains that his counsel was ineffective because he failed to impeach Bo Villarreal with his previous statements. Villarreal was a witness against Saenz who testified that Saenz admitted shooting Silguero and the others. Saenz made the admission while the two of them were in the Nueces County Jail in mid-October 2009, approximately two weeks after the shooting.

### A. Standard of Review

"For a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. An ineffective-assistance claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Saenz is required to establish that counsel's performance failed to satisfy an objective standard of

10

reasonableness under prevailing professional norms and Saenz was prejudiced because of that deficiency. *Ex parte Bowman*, 533 S.W.3d 337, 350 (Tex. Crim. App. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). "Isolated errors or omissions of counsel do not amount to deficient performance, which is judged by the totality of the representation." *Id.* We must presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

In most cases on direct appeal the record will not be adequately developed to address a claim of ineffective assistance of counsel. *Menefield*, 363 S.W.3d at 592–93. This may be particularly true when counsel has not been given an opportunity to explain his reasons for undertaking the challenged action. *Id.* at 593. When trial counsel has not been afforded an opportunity to explain his actions, "the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.*

## B. Discussion

There is no record of counsel's thought process regarding his decision not to impeach Villarreal with his previous testimony. From our review of the trial record, it is apparent that defense counsel was familiar with the previous trial record. Villarreal admitted that he knew Saenz through the gang Suicidal Barrios. Saenz told Villarreal that Saenz "he did a shooting." When Villarreal asked him "who it was on," Saenz responded that it was a group of people from the Quare and he said it was a female Debo. Villarreal testified that his cousin Silguero's nickname was Debo. Defense counsel

11

elicited Villarreal's admission that he had threatened to kill a police officer, that Villarreal had been in substance abuse treatment for alcoholism, that he violated the terms of his supervision by having a relationship with a female guard at the rehabilitation facility, that he was sentenced to four years' imprisonment at TDCJ for his threat to kill an officer in 2009 after he was in the Nueces County Jail with Saenz, and that before this trial he was convicted of possession of a controlled substance for which he served a state jail sentence. Defense counsel established that Villarreal did not report Saenz's admission right away and he was not interviewed by detectives in this case until December 3, 2009. Counsel questioned Villarreal regarding his previous statement that there were two people in the vehicle, Saenz and Henry Ayala. Villarreal responded that all he knew about the shooting came from Saenz, and he had no other information. At closing, counsel argued that Villarreal was not a credible witness.

Appellate counsel did not make any record of the testimony that defense counsel allegedly should have used to cross-examine Villarreal. Appellate counsel points only to the partial recitation of evidence in the court of criminal appeals' opinion that reversed Saenz's original conviction. *Ex parte Saenz*, 491 S.W.3d 819, 832 (Tex. Crim. App. 2016). The record in that case is not before us.

The Court does not have a sufficient record from which to determine whether Saenz's third issue on appeal is valid. Saenz's claim of ineffective assistance of counsel is better made in an article 11.07 proceeding. TEX. CODE CRIM. PROC. ANN. art. 11.07 (West, Westlaw 2017 through 1st C.S.). We overrule Saenz's third issue on appeal.

12

## V. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of August, 2018.