NUMBER 13-02-458-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG  

 

FELIX
CASTILLO, JR.,                                                          Appellant,

 

v.

 

THE
STATE OF TEXAS,                                                                  Appellee.

 

On
appeal from the 398th District Court of Hidalgo County, Texas.

 

 

O P I N I O N

 

Before Justices Yañez, Castillo, and Garza

Opinion by Justice Garza

 








Felix Castillo, Jr. challenges his convictions for
murder and attempted capital murder by 21 issues; however, his brief addresses
only the following five issues:  (1)
appellant=s convictions are barred by the doctrine of double
jeopardy; (2) appellant received ineffective assistance of counsel; (3) the
trial court erred by failing to hold a hearing to determine whether appellant
had knowingly waived an alleged conflict of interest resulting from his counsel=s brief dual representation of appellant and one of
his co-defendants; (4) the trial court erred by admitting evidence of
extraneous offenses because the State did not provide adequate notice of its
intent to offer such evidence; and (5) the trial court erred by denying
appellant=s oral request for severance of defendants and oral
request for mistrial.  To the extent
appellant seeks to challenge his convictions based on any other issues, his
brief fails to present anything for this Court to review, as it does not
contain a clear and concise argument for the contentions made, together with
appropriate citations to authorities and to the record.  See Tex.
R. App. P. 38.1(h).  For the
reasons that follow, we overrule appellant=s five issues and affirm the judgment of the trial
court.

Background


Francisco AFrank@ Sanchez was killed in a drive-by shooting on
December 31, 2000.  Rafael Almanza was
shot in the same incident, but he survived. 
Appellant was charged by indictment with one count of murder for the
killing of Sanchez and one count of attempted capital murder for trying to kill
both Sanchez and Almanza.  Appellant was
tried jointly with two co-defendants: 
his wife Mary Socorro Avila Castillo (AMary@), who was acquitted of the murder and attempted
capital murder charges but convicted of tampering with evidence for disposing
of the murder weapon, and Mary=s cousin, Javier Hernandez Reyes (AJavier@), who was acquitted of the murder and attempted
capital murder charges.  Appellant was
convicted of murder and attempted capital murder, and this appeal ensued. 

I.  Double
Jeopardy 








In his first issue, appellant asserts that he has
been punished twice for the murder of Frank Sanchez.  Specifically, he argues that, because he was
convicted and punished for Sanchez=s murder, the State should not have been able to use
an attempt to murder Sanchez as part of the attempted capital murder
charge.  Although appellant failed to
raise any double jeopardy objection before the trial court, see Tex. R. App. P. 33.1, a double jeopardy
claim may be raised for the first time on appeal if (1) the undisputed facts
show the double jeopardy violation is clearly apparent on the face of the
record and (2) enforcement of usual rules of procedural default serves no
legitimate state interests.  Gonzalez
v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).








The Fifth Amendment guarantee against double
jeopardy consists of three separate constitutional protections:  first, it protects against a second
prosecution for the same offense after acquittal; second, it protects against a
second prosecution for the same offense after conviction; and third, it
protects against multiple punishments for the same offense.  Lopez v. State, 108 S.W.3d 293, 295B96 (Tex. Crim. App. 2003).  Appellant has raised an issue relating to the
Amultiple punishments@
aspect of the double jeopardy doctrine. 
The Fifth Amendment=s multiple punishments prohibition is violated if a
defendant Ais convicted of more offenses than the legislature
intended.@  Ex Parte
Ervin, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999) (citing Ball v. United
States, 470 U.S. 856 (1985)).  The
legislature is endowed with the power to establish and define criminal
offenses.  Ex parte Hawkins, 6
S.W.3d 554, 556 (Tex. Crim. App. 1999). 
The Double Jeopardy Clause puts little, if any, limitation on this
power.  Id.   In Blockburger, the United States
Supreme Court stated, AThe applicable rule is that where the same act or
transaction constitutes a violation of two distinct statutory provisions, the
test to be applied to determine whether there are two offenses or only one, is
whether each provision requires proof of a fact which the other does not.@  Blockburger
v. United States, 284 U.S. 299, 304 (1932). 









The court of criminal appeals has explained that, in
the multiple punishments context, the Blockburger test is simply a rule
of statutory construction, which is useful in attempting to ascertain
legislative intent.  Ervin, 991
S.W.2d at 807 (citing Missouri v. Hunter, 459 U.S. 359, 366
(1983)).  The Blockburger test
cannot negate a clearly expressed legislative intent to impose multiple
punishments.  Id. (citing Hunter,
459 U.S. at 368).   The status of the Blockburger
test as a Amere rule of statutory construction@ raises an inverse conclusion as well:  the Blockburger test cannot authorize
two punishments where the legislature clearly intended only one.  Id. 
And that status raises the possibility that there exist other rules of
statutory construction that may be employed to help ascertain whether a
legislature intended multiple punishments. 
Id. Other (nonexclusive) considerations relevant to determining
whether the legislature intended multiple punishments are (1) whether the
offenses are contained within the same statutory section, (2) whether the
offenses are phrased in the alternative, (3) whether the offenses are named
similarly, (4) whether the offenses have common punishment ranges, (5) whether
the offenses have a common focus (i.e., whether the Agravamen@ of the offenses is the same) and whether that
common focus tends to indicate a single instance of conduct, (6) whether the
elements that differ between the offenses can be considered the Asame@ under an imputed theory of liability that would
result in the offenses being considered the same under Blockburger
(i.e., a liberalized Blockburger standard utilizing imputed elements),
and (7) whether there is legislative history containing an articulation of an
intent to treat the offenses as the same or different for double jeopardy
purposes.  Id. at 814.   

A.  The Blockburger
Test

Review of the statutory elements of the charged
offenses shows that murder and attempted capital murder (based on an attempt to
commit multiple murders) are not the same offense under the Blockburger test.  Each offense requires proof of a fact which
the other does not.  See Blockburger,
284 U.S. at 304.  A person commits the
offense of murder if he intentionally or knowingly causes the death of an
individual.  Tex. Penal Code Ann. ' 19.02(b)(1) (Vernon 2003).  A person commits the offense of attempted
capital murder if he specifically intends to commit the offense of capital
murder (here, the murder of more than one person during the same criminal
transaction) and does an act amounting to more than mere preparation that tends
but fails to effect the commission of capital murder.  Tex.
Penal Code Ann. '' 15.01(a) (Vernon 2003), 19.03(a)(7)(A) (Vernon
Supp. 2004B05).  Each
offense thus requires proof of a fact which the other does not:  (1) murder requires the death of an
individual and attempted capital murder does not, and (2) attempted capital
murder requires an intent to kill more than one person and murder does
not.  The offenses are therefore
different under the Blockburger test. 
See Blockburger, 284 U.S. at 304.    

B.  Other
Considerations 








As explained above, in the context of multiple
punishments, the Blockburger test is a Amere
rule of statutory construction.@  Ervin,
991 S.W.2d at 807.  The ultimate inquiry
is whether the legislature intended to permit multiple punishments.  Id. at 814.  To conduct this inquiry, we must consider not
only the Blockburger test but also the other nonexclusive factors
enumerated by the court of criminal appeals in Ervin.  See id. at 814.  In this case, these factors militate against
a conclusion that the charged offenses are the same for double jeopardy
purposes:  (1) the statutory provisions
for each offense are not located in the same section, see Tex. Penal Code Ann. '' 15.01(a), 19.02(b)(1), 19.03(a)(7)(A); (2) the
offenses are not phrased in the alternative; (3) they are similarly named only
in that the titles of both offenses include the term Amurder@; (4) they do not necessarily have the same
punishment range;[1]
(5) the offenses do not have a common focus tending to indicate a single
instance of conduct because the gravamen of murder is the intentional killing
of a person, whereas the focus of attempted capital murder is the intentional
attempt to kill more than one person; (6) the offenses are not the same under Blockburger;
and (7) we are unaware of any legislative history containing an articulation of
an intent to treat the offenses as the same or different offenses for double
jeopardy purposes.   

Based on these considerations, we conclude that the
charged offenses are not the same for the purpose of double jeopardy.  Accordingly, appellant=s first issue is overruled. 

II. 
Ineffective Assistance of Counsel 








In his second issue, appellant argues he was
provided ineffective assistance of counsel because his trial counsel (1) failed
to withdraw from representing appellant after discovering that he had a
conflict of interest, (2) failed to file a motion for severance of defendants
on behalf of appellant, (3) failed to file a motion for new trial, and (4)
abandoned appellant prior to the deadline for filing a motion for new trial. 

We apply a two‑prong test to determine whether
representation was so inadequate that it violated the Sixth Amendment right to
counsel.  Munoz v. State, 24
S.W.3d 427, 433 (Tex. App.CCorpus Christi 2000, no pet.) (citing Strickland
v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726
S.W.2d 53, 54B55 (Tex. Crim. App. 1986)).  First, trial counsel=s performance must fall below an objective standard
of reasonableness.  Id. (citing Strickland,
466 U.S. at 687B88).  Second,
appellant must prove, by a reasonable probability, that counsel=s deficient performance prejudiced the defense;
that, but for counsel=s errors, the result of the proceeding would have
been different.  See id. (citing Strickland,
466 U.S. at 694).  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Id. at 433B34 (citing Strickland, 466 U.S. at 693).  Appellant must overcome a strong presumption
that counsel=s performance fell within the wide range of
reasonable professional assistance.  Id.
at 434 (citing Thompson v. State, 9 S.W.3d 808, 812B14 (Tex. Crim. App. 1999); Tijerina v. State,
921 S.W.2d 287, 289 (Tex. App.CCorpus Christi 1996, no pet.)).

A.  Conflict
of Interest

In his first sub-issue, appellant contends that his
attorney,  Jesus AJesse@ Contreras, rendered ineffective assistance of
counsel by failing to withdraw from representing appellant after he discovered
a conflict of interest.   The alleged
conflict arose from counsel=s dual representation of appellant and appellant=s wife, Mary. 
In order to address this contention, we must review the circumstances of
counsel=s dual representation.  

 








1.  Relevant
Facts

Appellant was arrested on April 20, 2001 and
requested court-appointed counsel on April 27, 2001.  The trial court initially appointed attorney
John Rivera, who Areturned it in June.@  The court then appointed attorney Rogelio
Garza on June 21, 2001.  Appellant was
indicted on August 2, 2001.  Attorney
Jesse Contreras was then retained to represent appellant and appeared for the
first time on appellant=s behalf on August 7, 2001. 

Meanwhile, Mary was also indicted on August 2, 2001,
but the indictment was only for tampering with evidence.  The court appointed attorney Lydia Reed to
represent Mary.  Jesse Contreras first
appeared on Mary=s behalf on August 28, 2001.  On February 14, 2002, Mary was additionally
indicted for the murder of Sanchez and attempted capital murder for trying to
kill both Sanchez and Almanza.  On
February 19, 2002, Contreras appeared with Mary as she was arraigned on the new
charges; the court Aappointed@ Contreras to represent Mary on those charges.[2]  

The attorneys learned on February 21, 2002 that the
trial court wanted to try all three defendants together.  On March 21, 2002, a bench conference was
held off the record.  Shortly thereafter,
on March 25, 2002, the court appointed attorney O. Rene Flores to represent
Mary.  Flores filed a motion to
substitute on April 3, 2002.  He filed a
formal appearance and a designation of attorney-in-charge on April 9, 2002.  








The sequence of representation was clarified at a
pretrial hearing held on May 16, 2002. 
At the hearing, Contreras stated that he had previously informed the
court of a potential conflict of interest due to his representation of
appellant and appellant=s wife, Mary. 
All parties agreed that Contreras had given the court such notice and
that, as a result, the court had appointed Flores to represent Mary.  Mary was sworn in and testified that she had
retained Contreras to represent her on the tampering charge and an unrelated
burglary charge.  She agreed that a
conflict of interest had arisen when she was indicted on the murder and
attempted capital murder charges because Contreras was already representing her
husband against those same charges. 
Flores stated that he had opened his file on Mary=s case on March 25, 2002.  Flores then moved to withdraw from
representing Mary because he had previously represented a person listed on the
State=s witness list. 
Mary testified that she wanted Flores to continue as her attorney.  The court denied the motion to withdraw, and
Flores represented Mary throughout the trial.                            In sum, the record shows that Contreras represented appellant
from August 2, 2001, shortly after his indictment, until August 20, 2002, when
appellant had been convicted and appellate counsel was appointed to represent
him.  The record shows that Contreras
also represented Mary on the murder and attempted murder charges for
approximately 34 days, from February 19, 2002 until March 25, 2002.  Appellant asserts that the short period of
dual representation amounted to ineffective assistance of counsel; however, he
has not met his burdens of showing that his trial counsel had an actual
conflict of interest and that the conflict actually affected his counsel=s performance.

2.  Analysis      








Ineffective assistance of counsel may result when an
attorney labors under a conflict of interest. 
Monreal v. State, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)
(citing Strickland, 466 U.S. at 692). 
A defendant can demonstrate a violation of his right to the reasonably
effective assistance of counsel if he can show (1) that his counsel was
burdened by an actual conflict of interest and (2) that the conflict had an
adverse effect on specific instances of counsel=s
performance.  Id. (citing Cuyler
v. Sullivan, 446 U.S. 335, 348B50 (1980)). 
An Aactual conflict of interest@ exists if counsel is required to make a choice
between advancing his client=s interest in a fair trial or advancing other
interests (perhaps counsel=s own) to the detriment of his client=s interest.  Id.
 Thus, an actual conflict of
interest exists when one defendant stands to gain significantly by counsel
adducing probative evidence or advancing plausible arguments that are damaging
to the cause of a co‑defendant whom counsel is also representing.  James v. State, 763 S.W.2d 776, 779 (Tex.
Crim. App. 1989); see also  Routier
v. State, 112 S.W.3d 554, 584 (Tex. Crim. App. 2003).

Appellant has failed to identify any actual conflict
of interest.  Counsel=s dual representation ceased some two months before
trial commenced.  Furthermore, the record
does not show that appellant and his wife had divergent interests or ever
advanced inconsistent defensive theories. 
Mary stated that she was with her family on December 31, 2000, the night
of the murder.  She also stated that
appellant was at his home sleeping that night and that he later joined her at
her parents= home for the rest of the evening.  Appellant never gave a statement to police
and did not testify at trial.  Because we
cannot discern how the defensive theories of appellant and Mary diverged, we
cannot conclude that counsel ever faced a choice of advancing either defendant=s interests to the detriment of the other.  Likewise, we cannot conclude that any
conflict had an adverse effect on specific instances of counsel=s performance. 
See Hurley v. State, 606 S.W.2d 887, 890 (Tex. Crim. App. 1980) (A[A] common defense often gives strength against a
common attack.@).           








Appellant faults his trial counsel for failing to
file a motion to sever defendants on his behalf and for failing to object to
the admission of Mary=s and Javier=s statements into evidence at trial.  There is no evidence in the record that any
action taken or not taken by counsel was due to any conflict of interest, and
appellant has failed to establish any connection between these instances of
counsel=s performance and any conflict of interest.  Accordingly, we will not sustain appellant=s ineffectiveness claim based on his first
sub-issue. 

B.  Failure to
Obtain Severance of Defendants

In his second sub-issue, appellant contends that
counsel was ineffective because he did not file a motion to sever defendants on
behalf of appellant.  

1.  Relevant
Facts

The clerk=s record shows that no written motion to sever
defendants was filed on behalf of appellant; however, at least three motions to
sever defendants were filed on behalf of Mary. 
The defendants were first notified on February 21, 2002 that the trial
court had decided to consolidate their cases for trial.  At a pretrial hearing on May 16, 2002, Javier=s counsel opposed severance of defendants, telling
the court, A[M]y understanding is that . . . [all three
co-defendants] will contend that they were not at all at the scene of the
shooting on the date of the incident.@  Appellant=s counsel disputed this, stating that Javier had
given a statement that appellant was responsible and that Mary and appellant
had implicated Javier.  The prosecutor
stated that he opposed the severance because the defendants 








were all claiming they were somewhere else when this
alleged offense took place.  Their
defenses are not inconsistent with each other. 
They are consistent with each other. 
They are just saying, we weren=t there, we didn=t do
it.  Each defendant has taken that
position, I wasn=t there I didn=t do it, I was somewhere else.  And so it=s our
position that these cases should be tried at the same time.

 

None of the parties introduced the co-defendants= statements or otherwise adduced any evidence of
prejudice.  The trial court denied the
motion for severance of defendants.  On
May 22, 2002, the trial court denied Mary=s motion to reconsider severance of defendants. 

Mary=s counsel re-urged her motion to sever defendants at
trial.  After the lead investigator had
testified about Mary=s statements to him, both Mary=s statement and Javier=s
statement were introduced with no objection from appellant or his
co-defendants.  The State then passed the
witness.  Javier=s counsel then cross-examined the investigator.  During the cross-examination, both Mary and
appellant objected to a question about Mary=s
testimony at a pretrial hearing, which was given solely for the purpose of
determining whether her statement to police was voluntary.  At this time, Mary=s counsel re-urged the motion to sever Abecause it has become very obvious there is
antagonism between the defendants.@  The court
denied the motion Abecause the statement has already come into
evidence.@  Appellant=s counsel moved for a mistrial because Ait=s become apparent that at least one of the
defendants is against the other defendants.@  The court denied the motion Aas being premature at this time.@  Mary=s counsel asserted that Ait=s obviously prejudicial for one client to implicate
the other in trial, and that=s the situation we have had here and we have had at
the beginning.@  The court
denied her motion for mistrial. 

2.  Analysis 








In his second sub-issue,
appellant contends that his trial counsel was ineffective because he did not
file a motion to sever defendants on behalf of appellant.  Even assuming, arguendo, that counsel=s performance was deficient, as appellant contends,
appellant has failed to establish by a reasonable probability that the result
of the proceeding would have been different but for counsel=s deficient performance.  See Munoz, 24 S.W.3d at 433.  As the State argues, appellant has not
demonstrated how being tried separately would have affected the ultimate
outcome of the proceedings.  Appellant
seems to suggest that Javier would not have testified in a severed trial, but
we have no assurance that would have been the case.  Furthermore, several other witnesses
corroborated Javier=s account, including Arnulfo Hinojosa, Jr., Eddie
Villaneuva, and Hope Caseras.  We have no
basis for concluding that these witnesses would not have testified in a severed
trial, if appellant had been granted one. 


The record also shows that
appellant had no real alibi other than the testimony of his relatives that he
was either sleeping at his house or with them at the time of the shooting.  Appellant did not testify at trial.  Javier, in contrast, made two statements to
police that corroborated his trial testimony that he was at a party with many
other people when the shooting occurred and that appellant later boasted about
doing the shooting.  Three other
witnesses and a photograph also corroborated Javier=s presence at the party, and one of the witnesses
also corroborated appellant=s admissions that he did the shooting.  We have no basis for concluding that the
evidence would have been different in a separate trial.   

Because no prejudice has
been shown, we cannot sustain appellant=s ineffectiveness claim based on his second
sub-issue.

C.  Failure to File a Motion for New Trial








In his third sub-issue,
appellant contends that his trial counsel rendered ineffective assistance by
failing to file a motion for new trial.

1.  Relevant Facts  

Appellant was sentenced on
June 12, 2002.  On June 19, 2002, counsel
for appellant filed a motion to withdraw, which the trial court never
granted.  Counsel filed a notice of
appeal on appellant=s behalf.  On
June 27, 2002, counsel for appellant filed a motion for Aa court-appointed appeals attorney to be substituted
as counsel of record for defendant on the Notice of Appeal.@  A AMotion to Appoint Appellate Counsel@ signed by appellant himself was also filed on June
27, 2002.  In that motion, appellant
indicated his desire to appeal his convictions, asked the court Ato take judicial notice of his indigency,@ and stated that a notice of appeal had already been
filed.  Appellant did not express any
interest in filing a motion for new trial, and no motion for new trial was ever
filed.  The trial court appointed
appellate counsel on August 20, 2002.

2.  Analysis  








Whether a defendant is
entitled to effective assistance of counsel during the time limit for the
filing of a motion for new trial has not been definitively decided by the court
of criminal appeals.  Smith v. State,
17 S.W.3d 660, 663 n.3 (Tex. Crim. App. 2000). 
Several courts of appeals have held that effective assistance is
required in this period.  Barnett v.
State, 76 S.W.3d 739, 741 (Tex. App.CWaco 2002, pet. ref=d); Prudhomme
v. State, 28 S.W.3d 114, 119 (Tex. App.CTexarkana
2000, no pet.); Hanson v. State, 11 S.W.3d 285, 288 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d); Massingill v. State, 8 S.W.3d 733, 736
(Tex. App.CAustin 1999, pet. ref=d); Burnett
v. State, 959 S.W.2d 652, 656 (Tex. App.CHouston
[1st Dist.] 1997, pet. ref=d).  Because
the State does not dispute appellant=s contention that effective assistance is required
during the time limit for filing a motion for new trial, we assume, without
deciding, that effective assistance is required.  See Smith, 17 S.W.3d at 663 n.3
(AWe are not asked to decide this issue today and will
not do so . . . .@).

When a motion for new trial
is not filed in a case, there is a rebuttable presumption that it was
considered by the appellant and rejected. 
Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998).   In this case, there is no evidence to rebut
the presumption that counsel adequately informed appellant of his right to file
a motion for new trial and that appellant rejected the option.  There is no evidence to show that appellant
was interested in filing a motion for new trial or that counsel did not
adequately assist him in doing so.  See
Hudson v. State, 128 S.W.3d 367, 381 (Tex. App.CTexarkana 2004, no pet.) (AThere is no evidence in the record that Hudson was
interested in the option of filing a motion for new trial and that counsel did
not adequately assist him in doing so. 
Therefore, nothing in the record exists to rebut the presumption that
Hudson was adequately informed of his right to file a motion for new trial and
that he ultimately rejected the option.@) (citation omitted). 

We cannot sustain appellant=s ineffectiveness claim based on his third
sub-issue. 

D.  Abandonment of Appellant During Time Limit to
File Motion for New Trial    








In his fourth sub-issue,
appellant argues that his trial counsel abandoned him prior to the deadline for
filing a motion for new trial.  This
contention duplicates, for the most part, appellant=s third sub-issue. 
Although trial counsel twice requested to be removed from the case, his
requests were not granted until the trial court appointed appellate counsel on
August 20, 2002 and implicitly discharged trial counsel.  Prior to the appointment of appellate
counsel, trial counsel protected appellant=s right to appeal by timely filing a notice of
appeal on his behalf.  Appellant seems to
argue that trial counsel abandoned him because he did not file a motion for new
trial, but as we noted above, there is no indication in the record that
appellant was interested in filing a motion for new trial or that trial counsel
failed to advise and assist appellant regarding a motion for new trial.  For these reasons, we cannot sustain
appellant=s ineffectiveness claim based on his fourth
sub-issue. 

Having reviewed appellant=s four sub-issues, we conclude that appellant=s ineffectiveness claim is without merit.  It is therefore overruled.  

III.  Conflict of Interest

In a third issue, appellant
seems to contend that the trial court erred by failing to hold a hearing to
determine whether appellant had knowingly waived an alleged conflict of
interest resulting from his counsel=s brief dual representation of appellant and his
co-defendant wife, Mary.  As stated
above, attorney Jesse Contreras informed the trial court of a potential
conflict of interest more than two months before trial.  In response to this concern, the trial court
appointed separate counsel to represent Mary. 
After new counsel was appointed to represent Mary, no objections or
concerns were raised of a potential conflict of interest arising from continued
representation of appellant by Contreras. 
Appellant now contends that the trial court erred by failing to hold, on
its own motion, a hearing to determine whether appellant had knowingly waived
any potential conflict of interest.   








We have already addressed
the conflict-of-interest issue as part of appellant=s ineffectiveness claim, which is the same approach
taken by the court of criminal appeals in cases in which error is argued based
on the trial court=s failure to hold a hearing to investigate an
apparent conflict.  See, e.g.,
Routier, 112 S.W.3d at 581B86.  In doing
so, we concluded that appellant has failed to identify any actual conflict of
interest.  Appellant=s third issue largely duplicates the contentions of
his ineffectiveness claim as it relates to counsel=s alleged conflict of interest.  The only twist to appellant=s third issue is that he now suggests that the trial
court had an obligation to hold a hearing for the purpose of allowing appellant
to waive the conflict of interest on the record.  Based on our conclusion that no actual
conflict of interest has been identified, we now conclude that appellant=s third issue presents no additional basis for
reversing the trial court=s judgment. 
Accordingly, for the reasons stated in the relevant part of our
disposition of appellant=s ineffectiveness claim, we overrule appellant=s third issue.             

IV.  Notice of Intent to Introduce Extraneous Offenses 

In his fourth issue,
appellant contends that the trial court erred by admitting evidence of
extraneous offenses because the State did not provide notice of its intent to
offer such evidence.  Rule 404(b)
provides that evidence of Aother crimes, wrongs, or acts@ may be admissible for certain purposes Aprovided that upon timely request by the accused in
a criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State=s case-in-chief such evidence other than that
arising from the same transaction.@  Tex. R. Evid. 404(b).

A.  Relevant Facts   








The record shows that
appellant filed a request for notice of the State=s
intent to use extraneous offenses on August 21, 2001, less than a month after
appellant was indicted.  On appeal,
appellant states, ANo written document of record establishes the State=s compliance with [appellant=s] request.@  This
statement is false.  The record contains
the State=s written notice of intent to introduce extraneous
offenses during its case-in-chief and as impeachment evidence.  Specifically, the State informed appellant
that it intended to introduce the following testimony:

Roxanna Palacios will testify that sometime around
November 2000, she saw Felix Castillo go to his house and bring out a semi
automatic pistol under his waist under his shirt.

 

Gregorio Granados &
Crystal Granados will testify that on 12/31/00 Felix Castillo had a pistol on
his person and pointed the pistol at Gregorio.  


The certificate of service shows that the notice was
faxed to trial counsel=s office on Friday, May 17, 2002, three days before
trial commenced.  At trial, counsel
admitted that he received the notice on May 17, 2002.  Nevertheless, on Monday, May 20, 2002, the
first day of trial, counsel objected to the adequacy of the State=s notice.  On
May 29, 2002, just before Roxanna Palacios testified, counsel renewed his
objection.  The trial court instructed
the State to refrain from Agoing into any testimony regarding the extraneous
offense.@








Roxanna Palacios was called
by the State, and no questions regarding the extraneous offense were asked on
direct examination.  Counsel for Javier
then cross-examined Roxanna.  Counsel for
appellant again objected to the introduction of evidence regarding the
extraneous offense, arguing that the State=s notice was untimely.  This time the trial court overruled counsel=s objection and allowed Roxanna to testify about the
extraneous offense.  Roxanna testified
that, several months before the New Year=s Eve shooting, Frank Sanchez (the deceased) spoke
to appellant=s girlfriend in front of appellant.  Appellant ran into his house, and when he
returned, he pulled out a handgun from under his shirt and fired it into the
ground.

When the State called
Crystal Granados to testify, counsel for appellant re-asserted his objection to
the timeliness of the State=s notice.  The
trial court did not expressly overrule this objection, but Crystal was allowed
to testify that she saw appellant point a handgun at her husband, Gregorio, on
the same night the fatal shooting occurred.          

The State then called
Gregorio to testify.  Again, counsel for
appellant objected to the timeliness of the State=s
notice.  The objection was overruled, and
Gregorio testified that appellant pointed a gun at him on the night of the
fatal shooting. 

B.  Analysis

As preliminary matter, we
note that Roxanna=s extraneous-offense testimony was introduced during
cross-examination by Javier=s counsel, not during the State=s case-in-chief. 
The State argues that the notice provision of rule 402(b) therefore does
not apply.  Because it makes little, if
any, difference to the outcome of this case, we assume, without deciding, that
rule 402(b) applies and decide whether the trial court erred by overruling
appellant=s objections to the timeliness of the State=s notice.  








The ultimate issue is
whether the State=s notice was Areasonable.@  See id.;
Hayden v. State, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001) (AThe rule requires >reasonable= notice.@). The determination of reasonableness of the notice
is committed to the sound discretion of the court.   Scott v. State, 57 S.W.3d 476, 481
(Tex. App.CWaco 2001, pet. ref=d); Sebalt
v. State, 28 S.W.3d 819, 822 (Tex. App.CCorpus
Christi 2000, no pet.).  A determination
that is within the zone of reasonable disagreement does not constitute an abuse
of discretion.   Sebalt, 28 S.W.3d
at 822.  In the absence of reasonable
notice, a trial court=s decision to admit evidence of an extraneous
offense constitutes an abuse of discretion. 
Scott, 57 S.W.3d at 481.      


In Sebalt, this Court
recognized that there is no authority to support the proposition that notice
given the Friday prior to a Monday trial is per se unreasonable.  Sebalt, 28 S.W.3d at 821B22.  Instead,
the reasonableness of the notice is determined by all of the facts and
circumstances of the case.  Id. at
822.  The reasonableness of the notice
must also be determined by reference to the purpose of the rule:  to eliminate the unfair prejudice that can
result from the surprise introduction of extraneous offense evidence at
trial.  Webb v. State, 36 S.W.3d
164, 178 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d) (op. on reh=g).

In this case, no testimony
of extraneous offenses was offered until 12 days after counsel received notice
from the State.  In our estimation, this
was not a Asurprise introduction.@  The trial court could have found that the
State=s notice was reasonable, and even if we were to
disagree, appellant has failed to show that the ruling fell outside the zone of
reasonable disagreement.  Accordingly,
appellant=s fourth issue is overruled.

V.  Denial of Motion to Sever and Motion for
Mistrial

In his fifth issue,
appellant argues that the trial court erred by denying his pretrial oral
request for severance of defendants and by denying his request for a
mistrial.  The facts relevant to this
issue were stated in Part II B of this opinion, regarding the second sub-issue
of appellant=s ineffectiveness claim.  








A.  Pretrial Motion to Sever

In his first sub-issue,
appellant contends that the trial court erred by denying his pre-trial request
to sever defendants.  Article 36.09
provides as follows:

Two or more defendants who
are jointly or separately indicted or complained against for the same offense
or any offense growing out of the same transaction may be, in the discretion of
the court, tried jointly or separately as to one or more defendants; provided
that in any event either defendant may testify for the other or on behalf of
the state; and provided further, that in cases in which, upon timely motion to
sever, and evidence introduced thereon, it is made known to the court that
there is a previous admissible conviction against one defendant or that a joint
trial would be prejudicial to any defendant, the court shall order a severance
as to the defendant whose joint trial would prejudice the other defendant or
defendants.

Tex. Code Crim. Proc. Ann. art. 36.09 (Vernon 1981).  Accordingly, severance is not a matter of
right but rests within the sound discretion of the trial court unless (1) there
is a previous admissible conviction against one defendant or (2) a joint trial
would, as a matter of law, prejudice a co‑defendant.  Aguilar v. State, 39 S.W.3d 700, 702 (Tex.
App.CCorpus Christi 
2001, pet. ref=d) (citing Garza v. State, 622 S.W.2d 85, 91
(Tex. Crim. App. 1980)); Smith v. State, 998 S.W.2d 683, 686 (Tex. App.CCorpus Christi 1999, pet. ref=d).  Absent
evidence of prejudice to one defendant in a joint trial, or evidence that one
of the defendants has a prior admissible conviction, a motion for severance is
left to the trial court=s discretion. 
Mendoza v. State, 61 S.W.3d 498, 501 (Tex. App.CSan Antonio 2001), aff=d, 88
S.W.3d 236 (Tex. Crim. App. 2002).  








In this case, appellant
asked the trial court to sever defendants because a joint trial would be
prejudicial, but neither appellant=s counsel nor counsel for his co-defendants produced
any evidence of prejudice at the pretrial hearing on the motion to sever
defendants.  Although the co-defendants
made various allegations of prejudice through their counsel, statements by
counsel that are not made under oath do not constitute evidence.   Rodriguez v. State, 903 S.W.2d 405,
412 (Tex. App.CTexarkana 1995, no pet.) (citing Delgado v. State,
544 S.W.2d 929 (Tex. Crim. App. 1977)). 
Therefore, the trial court did not err by denying the motion.  See Silva v. State, 933 S.W.2d 715,
719 (Tex. App.CSan Antonio 1996, no pet.) (citing Ransonette v.
State, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976)).

B.  Motion for Mistrial

In his second sub-issue,
appellant contends that the trial court erred by denying his oral motion for
mistrial, which argued that Ait=s become apparent that at least one of the
defendants is against the other defendants.@  Although counsel=s request was plainly for a mistrial, it followed an
oral motion by Mary=s counsel to sever defendants.  The motion to sever defendants argued that it
Ahas become very obvious there is antagonism between
the defendants.@  The trial
court denied the motion, and counsel for appellant subsequently moved for a
mistrial.  Given that the motion to sever
and the motion for mistrial were urged on the same basis, we understand
appellant=s second sub-issue to challenge the trial court=s refusal to sever defendants during trial. 








A motion to sever on the
grounds of unfair prejudice is Atimely@ if made at the first opportunity or as soon as the
grounds for prejudice become apparent or should have become apparent, thus
providing the trial court an opportunity to rule on the potentially prejudicial
evidence at the time it is introduced.  Aguilar,
39 S.W.3d at 910.  In this case, the
grounds for prejudice should have become apparent to counsel before trial.  The prejudicial evidence was Javier=s statement to police, in which Javier stated that
he was at a party when the drive-by shooting occurred, that appellant picked
him up at the party in a white truck, and that appellant later bragged about
doing the shooting.  There was also a
letter from Javier to Deputy Jasso in which Javier related essentially the same
story.  At the pretrial hearing on the
motion to sever, counsel for appellant indicated that he was aware of the
contents of Javier=s police statement but made no effort to produce it
to the court for review.  See id. at
905 (AIn seeking a severance, evidence which a co‑defendant
can present prior to trial should be presented before trial.@) (emphasis in original).  Subsequently, at trial, Javier=s police statement was admitted without objection
from appellant or his co-defendants.  Given
these circumstances, we cannot conclude that counsel=s motion to sever defendants during trial was
timely.  Accordingly, the trial court did
not err by denying the motion.

Appellant=s fifth issue is overruled.

VI.  Conclusion

For the foregoing reasons,
appellant=s issues on appeal are overruled and the judgment of
the trial court is affirmed.                                                                     

 

 

                                             

DORI CONTRERAS GARZA,

Justice

 

Publish.                                              

Tex.R.App.P. 47.2(b)

Opinion delivered and filed this

the 6th day of October, 2005.











[1] Murder is either a first or second degree felony, depending on whether
a finding of sudden passion is made.  Tex. Penal Code Ann. ' 19.02(c) (Vernon 2003).  Because criminal attempt is one degree lower
than the underlying offense, attempted capital murder is a first degree
felony.  Tex. Penal Code Ann. '' 15.01(d) (Vernon 2003), 19.03(b) (Vernon Supp. 2004B05).          

 





[2] Mary later testified that Contreras had actually been retained.