Willie Earl JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–251 CR.

Court of Appeals of Texas, Beaumont.

Dec. 22, 1993.

Jimmy Bell, Orange, for appellant.

John Kimbrough, Dist. Atty., Troy Johnson, Asst. Dist. Atty., Orange, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This is an appeal from the conviction of a felony offense of attempted murder. *See* TEX.PENAL CODE ANN. §§ 19.02, 15.01 (Vernon 1989, Vernon Supp.1993). The matter was tried before a jury and the jury found the appellant guilty. The jury also found the enhancement allegation to be true and made an affirmative finding on the use of a deadly weapon. Punishment was assessed by the court at thirty years confinement in the Texas Department of Criminal Justice, Institutional Division. This appeal now ensues. We affirm.

The appellant has presented before this Court one point of error which reads: "There is insufficient evidence to sustain appellant's conviction." The standard for reviewing sufficiency of the evidence directs the reviewing court to determine whether, after reviewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234 (Tex.Crim. App.1989).

Albert Solomon was riding home on his bicycle at about 11:00 p.m. on the night of July 18, 1991. He was riding on Cypress Street and was approaching the intersection at Cypress and Mill Street in Orange when he was shot. Just before the shot, Mr. Solomon heard a familiar voice call out to him "hey, boy". He looked in the direction of the voice and saw a person he knew as "Bull". The victim stated that he was familiar with the voice of the person who called out to him because he had met him and had talked to him on two prior occasions. The victim identified the voice as being that of the appellant.

The victim told the jury that he saw the appellant's face, facial structure, hair and hair style just before the shooting. The victim admitted that he could not identify any specific items of clothing and could only describe the barrel of the rifle used by the appellant. However, the victim did relate that the appellant was standing and trying to take aim which gave him, the victim, enough time to see the appellant's face. The victim described the appellant to the responding officer as a black male with a medium build and an afro. He also described the lighting source as being street lamps. These street lamps illuminated the area sufficiently to allow the victim to view the appellant's facial features, thus enabling him to identify the person who shot him in a pictorial book provided by the police detective.

The victim said that he knew the appellant because several days prior to the shooting the victim had borrowed the appellant's car. The appellant had consented to allow the victim to use his car. That same day the victim and the victim's friend, Bobby Turner, were riding in the appellant's car. The victim said that the appellant's car was stolen that day while the victim had stopped and gone into a friend's house. Upon exiting the friend's house, the car was missing and so was his friend, Bobby Turner. On July 15, 1991, the appellant walked to the victim's house looking for his car. When the victim informed the appellant that his car was missing, the appellant made threatening remarks to the victim. Such remarks were reportedly: "You better find my car"; "Boy, you don't know who you're messing with". The victim said that the appellant also made some threatening remarks to the victim's sister to the effect that if he [appellant] didn't get his car, something bad is going to happen to him [victim].

Detective Sergeant Kevin Breshears of the Orange Police Department testified. Officer

Breshears testified that he had conducted the in-house identification procedure with the victim. Officer Breshears stated that the particular pictorial book contained the photograph of the appellant along with approximately 350 other photographs of black males and the victim pointed to the appellant's photograph and said: "That's him, that's Bull".

The next witness to testify was Officer Richard Sonnier of the Orange Police Department. He investigated the crime scene. At the scene he discovered a fresh, spent .410 shotgun shell in the same location where the victim saw the appellant. Sonnier pointed out in his testimony that the artificial lighting (the street lamps) that existed that night was sufficient to enable a person to get a good view of facial features. Additionally, the victim was only about 30 feet away from the appellant.

Dr. Alex Jeffro testified that he was the emergency room physician at Baptist Hospital in Orange. This doctor treated the victim for gunshot wounds in the emergency room shortly after the shooting. The doctor stated that the wounds received by the victim were consistent with the account given by the victim of the shooting. Dr. Jeffro said that he discovered the victim had received severe injuries to his upper extremities, that is, his upper and lower arms, and several abrasions. The doctor said that upon examination of Mr. Solomon, it appeared that the gunshot wounds were received from a shot being fired from some distance. The multiple wounds were from pellets. The pellets apparently came from some type of shotgun and these pellets had penetrated in a shallow manner and some had even fallen out. But there was one pellet that had penetrated deeply and it was not removable from the arm of the victim. The doctor stated that these injuries were capable of causing death. The doctor testified that the most severe injury was found in the victim's right wrist where a pellet was lodged inside the joint which would later cause problems in the function of the wrist of the victim.

The next witness to testify was the appellant himself. The appellant presented five witnesses that were called for his defense to establish his alibi. They were: Elgin Lastrappe, Jolene Lastrappe, Shirley Jones, Ella Everett, and Lionel Brooks. It is important to note that four of the witnesses called by the appellant all testified to the fact that the appellant had attended a birthday party for his mother on that night, July 18, 1991, which they said took place on a Saturday. At that time the State requested the court to take judicial notice of the fact that July 18, 1991, fell on a Thursday night and not on a Saturday.

As for the appellant's contentions that no gun was found, that the location of the shooting was a known drug trafficking area, and that Solomon was not in shock after being shot and Solomon was not sure about which shot actually struck him, did nothing to render the evidence insufficient.

Importantly, this was a jury trial. The rule is well-established that where the jury is the fact-finder, the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. The jury may believe some witnesses and refuse to believe other witnesses. It may accept portions of the testimony of a witness and reject other portions. *See Esquivel v. State*, 506 S.W.2d 613 (Tex.Crim.App.1974).

After reviewing the record, we conclude presume that the jury did not believe the testimony of the appellant's witnesses. The jury had the prerogative to give what weight and credibility it chose in determining the guilt of an accused. Under this record, we will not disturb the jury's verdict. Upon reviewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to uphold the jury's verdict of attempted murder beyond a reasonable doubt. Therefore, we overrule point of error number one and affirm the trial court judgment.

AFFIRMED.