Opinion issued April 12, 2012.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00426-CV

———————————

In the
Matter of F.D.M., a minor



 



 

On Appeal from the 314th District Court

Harris County, Texas



Trial Court Case No. 2010-05600J

 



 

MEMORANDUM OPINION

          A
jury found beyond a reasonable doubt that F.D.M. committed the offense of
aggravated assault with a deadly weapon, and the trial court sentenced F.D.M.
to the custody of the Texas Youth Council. In a single issue, F.D.M. contests
the legal and factual sufficiency of the evidence to support the jury’s
finding. We affirm. 




 

Background

          A.
Aguga is a corrections officer for the Texas Department of Criminal Justice who
earned extra money in his off-hours by selling ice cream from an ice cream
truck. Late one afternoon while he was driving the ice cream truck, a group of
teenagers flagged Aguga down and began asking him about his ice cream. One or
two of the teenagers disappeared around the back of the truck, while Aguga
continued answering questions for the other teenagers. Aguga heard a shot on
the other side of the truck. He turned and was struck by a bullet in the neck.
The teenager on the other side of the truck shot him a second time, in the
shoulder. All of the teenagers then fled the scene.

          Aguga
was hospitalized for a month and had to have multiple surgeries as a result of
his gunshot wounds. While he was in the hospital, and again at trial, Aguga
identified F.D.M. as the teenager who had the gun and who shot him. He
testified that none of the other teenagers was armed.

          A.
Craft lives in the neighborhood where Aguga was shot. She was entering the
neighborhood as Aguga was exiting the ice cream truck, bleeding from the
gunshot wounds. She witnessed the teenagers around the truck start running
away, but she was unable to identify any of them. She testified that one of the
teenagers was on a small bike.

          C.R.
was also in the neighborhood when Aguga was shot.
C.R. testified that he was in the neighborhood that afternoon spending time
with friends when they ran into F.D.M. C.R. testified that when he approached
F.D.M., F.D.M. shooed him away and told him that he was going to rob the ice
cream man. C.R. thought that F.D.M. was joking. C.R. testified that he
subsequently heard two pops that sounded like firecrackers. He then saw Aguga
screaming for help. He also testified that he saw F.D.M. and another
acquaintance jogging away from the ice cream truck. 

          J.B.
was with C.R. when they encountered F.D.M. He testified that F.D.M. waived them
away because “he was about to do something bad.” He further testified that he
witnessed F.D.M. shoot Aguga and run away. He stated that he had seen F.D.M.
with a gun several days earlier. J.B. identified the gun F.D.M. used in the
shooting as a .32-caliber and testified that he had seen it at F.D.M.’s house
days before the shooting. J.B. testified that he was not wearing his glasses
when he witnessed the shooting but that he knew F.D.M. and could recognize him
without glasses.

          R.T.
also testified about the day of the shooting. He testified that he was on his
bike, talking to the ice cream man when F.D.M. approached. According to R.T.,
F.D.M. asked for a dollar, stating that he would pay R.T. back because he was
“fixing to get the ice cream man.” R.T. testified that F.D.M. pulled out a gun
when he said this, and R.T. understood him to be saying that he was going to
shoot the ice cream man. R.T. testified that he saw F.D.M. approach the side of
the ice cream truck and heard shots but did not see the shooting. R.T. also
testified that after the shooting F.D.M. threatened to beat him up if he called
the police. 

          Deputy T. Pasket
was the first officer on the scene after the shooting. He testified that they
recovered two shell casings at the scene. Sergeant R. Minchew, to whom the case
was assigned, testified that the shell casings were from a .32-caliber gun. Sergeant
Minchew also testified that Crime Stoppers received
an anonymous tip that a young man named “Chris was the shooter” and that the young
man lived on Carola Forest in the neighborhood where
the shooting occurred. Sergeant Minchew spoke with an
officer assigned to the neighborhood and identified F.D.M. as “Chris.” At
trial, all three of the young men who knew F.D.M. called him by the name
“Chris,” and another deputy testified that F.D.M. lived on Carola
Forest. 

A few days after the shooting, Sergeant Minchew visited
Aguga while he was recovering in the hospital. Aguga gave a written statement
and, in a photographic lineup, identified F.D.M. as the person who shot him. Sergeant
Minchew testified that he asked Aguga, who was still
not fully able to speak due to the neck wound, how sure he was about the
identification and Aguga mouthed that he was “very sure.” 

F.D.M. presented testimony from one witness at trial—his
mother, S.W. She also testified that everyone knew him as “Chris.” She did not
know where her son was at the time of the shooting. She testified that R.T. had
come to her house to see her son after the shooting, contrary to his testimony
that he did not see F.D.M. after the shooting until F.D.M. later threatened him
not to go to the police. 

Standard of Review

          Although
juvenile cases are
civil proceedings, we review challenges to the sufficiency of the evidence to
support a finding that a juvenile engaged in delinquent conduct using the
standards applicable to criminal cases. In re C.J., 285 S.W.3d 53, 55–56 (Tex. App.—Houston [1st Dist.]
2009, no pet.); In re G.A.T.,
16 S.W.3d 818, 828 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).
This Court reviews criminal sufficiency-of-the-evidence challenges under a
single standard of review—the Jackson
standard—regardless of whether the appellant raises a legal or factual
sufficiency challenge. See Ervin v. State, 331 S.W.3d 49, 52–54 (Tex. App.—Houston [1st Dist.] 2010, pet.
ref’d) (applying Brooks v. State, 323
S.W.3d 893, 894–913 (Tex. Crim. App. 2010) and Jackson v. Virginia, 443 U.S. 307, 320, 99 S. Ct. 2781,
2789 (1979)); see also Bearnth v. State, No. 01-09-00906-CR,
2011 WL 5110241, at *2 (Tex. App.—Houston [1st Dist.] Oct. 27, 2011, no pet.). 

Under the Jackson standard, evidence is insufficient
to support a conviction if, considering all the record evidence in the light
most favorable to the verdict, no rational fact-finder could have found that
each essential element of the charged offense was proven beyond a reasonable
doubt. See Jackson, 443
U.S. at 317, 319, 99 S. Ct. at 2788−89; Laster
v. State, 275 S.W.3d 512,
517 (Tex. Crim. App. 2009). Evidence is insufficient under this standard in
four circumstances: (1) the record contains no evidence probative of an element
of the offense; (2) the record contains a mere “modicum” of evidence probative
of an element of the offense; (3) the evidence conclusively establishes a
reasonable doubt; and (4) the acts alleged do not constitute the criminal
offense charged. See Jackson,
443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; Laster,
275 S.W.3d at 518. The Jackson standard gives full play to the
responsibility of the fact finder to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court
presumes the fact finder resolved any conflicts in the evidence in favor of the
verdict and defers to that resolution, provided that the resolution is
rational. See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793. 

Sufficiency of the Evidence

          To
prove that F.D.M. committed the aggravated assault with which the State charged
him, the State had to prove that F.D.M. “intentionally, knowingly, or
recklessly cause[d] bodily injury to [Aguga]” and “use[d] or exhibit[ed] a deadly weapon” when he did
so. Tex. Penal Code Ann. §§
22.01(a)(1), 22.02(a)(2) (West 2011). F.D.M. contends that the State’s case
rests primarily upon the testimony of two witnesses—Aguga and J.B.—and that the testimony of these
witnesses is not credible. 

F.D.M. argues that Aguga’s testimony is not credible for two reasons. First, F.D.M.
asserts that Aguga “testified that he felt like he was being surrounded and had
to leave,” and that “[u]nder these circumstances, [Aguga] could easily misidentify the individual who shot
him.” This contention is undermined by the testimony at trial. Aguga identified
F.D.M. as his shooter and testified that he had a good view of F.D.M.’s face
when F.D.M. shot him. Sergeant Minchew also testified that Aguga indicated that
he was “very sure” when he identified F.D.M. as the shooter in the photographic
lineup. 

Jurors may rely on testimony from
the victim to identify a shooter and on the victim’s identification of his or
her shooter in a photographic lineup. See
Harmon v. State, 167 S.W.3d 610, 614 (rejecting argument that evidence was
insufficient to support conviction when only one witness, the victim, was able
to identify defendant as shooter); see
also Akbar v. State, 190 S.W.3d 119, 124 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (relying on victim
identification of shooter); Gilstrap v.
State, 65 S.W.3d 322, 329 (Tex. App.—Waco 2001, pet. ref’d) (same); Epps
v. State, 24 S.W.3d 872, 880 (Tex. App.—Corpus Christi 2000, pet. ref’d) (same);
Jones v. State, 867 S.W.2d 175, 176 (Tex. App.—Beaumont 1993, no pet.) (same). Even the testimony of a single eyewitness may be
sufficient to support a conviction. Davis v. State,
177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)); Lewis v. State, 126 S.W.3d 572, 575 (Tex App.—Texarkana
2004, pet. ref’d). Here, two witnesses identified F.D.M. as the shooter and
several witnesses identified him as present at the time of the shooting and as
having made statements indicative of guilt prior to the shooting.

Second, F.D.M. argues that Aguga
could not identify the shooter when Sergeant Minchew first visited him in the
hospital. But F.D.M. misstates the testimony. Sergeant Minchew
was unable to speak to Aguga the first time he visited the hospital because of
his medical condition. The testimony F.D.M. cites in his brief relates to Sergeant
Minchew ’s second visit to Aguga in the hospital, at
which time Aguga did identify F.D.M. as the shooter. 

          F.D.M.
next contends that J.B.’s testimony was not reliable because the sun was “kind
of” in his eyes at the time of the shooting, and he was not wearing his
glasses. J.B. testified that he knew F.D.M. and was able to identify F.D.M.
without his glasses, and F.D.M. presented no evidence to contradict this
testimony. As the sole judges of credibility, the jurors are free to believe or
disbelieve all or any part of a witness’s testimony. Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981);
Davis, 177 S.W.3d at 358. Thus, it was the exclusive province of the
jury to determine the credibility of J.B.’s testimony that he had been able to
identify F.D.M. without his glasses.

          F.D.M.
also argues that “[t]he State produced several witnesses who heard the
appellant say, shortly before the alleged offense, that he was going to rob the
ice cream man,” but “the probative value of this testimony is easily discounted
by the testimony of C.R., who” said that F.D.R. “‘joke[d] around a lot’ and
dismissed the statement as [F.D.R.] simply ‘playing.’” F.D.R. asserts that C.R.
believed that he was not serious about robbing anyone, and “[t]here was no
reason for the jury to think otherwise.” We disagree. Four witnesses placed
F.D.M. at the scene of the crime; two witnesses identified F.D.M. as the
shooter; one witnesses identified the type of gun F.D.M. used in the shooting
and placed the same type of gun in F.D.M.’s home days before the shooting and
in his possession immediately before the shooting. Additionally, one witness
testified that F.D.M. threatened to beat him up if he went to the police. See Wilson v. State, 7 S.W.3d 136, 141
(Tex. Crim. App. 1999) (holding that evidence of threatening witness is
evidence of consciousness of guilt) (citing Ransom v. State, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996) (op. on reh’g)). This evidence reasonably could have caused the
jury to conclude that F.D.M. was not joking when he made statements to others
that he was going to rob the ice cream man immediately before the shooting.

Conclusion

We hold that the evidence is sufficient to support the
jury’s finding beyond a reasonable doubt that F.D.M. committed the
offense of aggravated assault with a deadly weapon. We therefore affirm the
trial court’s judgment.

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Higley and Brown.